Ellis *v.* Reaves.

* Ellis *v.* Reaves.

(*Nashville.* January 5, 1895.)

MORTGAGES AND DEEDS OF TRUST. *Cover foal of mortgaged mare.*

The title of the foal of a mare bred, after the execution of the deed, by the maker of a mortgage or deed of trust conveying the legal title of such mare, passes to the mortgagee or trustee, in the absence of an agreement to the contrary.

Cases cited: Bank *v.* Ewing, 12 Lea, 600; Latta *v.* Fowlkes, *post*, p. 219; 8 Gill & Johnson, 39; 11 How., 396; 9 B. Mon., 126; 67 Md., 573; 85 Ala., 417; 88 Ala., 225; 69 Ia., 504 (S. C., 58 Am. R., 230); 60 N. H., 59 (S. C., 49 Am. R., 306); 64 Wis., 35 (S. C., 54 Am. R., 578); 46 Mich., 131 (S. C., 41 Am. R., 153); 13 Neb., 400.

---

FROM TROUSDALE.

---

Appeal from Circuit Court of Trousdale County. W. T. SMITH, J.

JOHN S. McMURRY and J. J. TURNER for Ellis.

S. F. WILSON, W. C. DISMUKES, and W. B. HALE, for Reaves.

CALDWELL, J. This is an action of replevin, brought by H. C. Ellis, trustee, before a Justice of the Peace, to recover from A. S. Reaves the

* The authorities as to the title to increase of animals are collected in a note to the Kentucky case of *Maize* v. *Bowman*, 17 L. R. A., 81.—REPORTER.

possession of several horses and one mule.    Pending
an appeal, by Reaves, from the Magistrate's judg-
ment, all of the stock, except the mule, were elim-
inated from the case by agreement.    The controversy
as to the mule was submitted to the Circuit Judge,
without a jury, and he pronounced judgment in favor
of the defendant.    The plaintiff appealed in error.

On May 11, 1891, the defendant, Reaves, exe-
cuted a deed of trust, whereby he conveyed to the
plaintiff, Ellis, as trustee, certain live stock, and
other personal property, to secure the payment of
certain debts to the Bank of Hartsville.    By the
terms of the trust, it matured April 1, 1892; but,
at the request of the maker, foreclosure was post-
poned for several months, and some of the horses
conveyed (being the same originally involved in this
suit) were not sold until after their recovery herein
before the Justice of the Peace.    When all of the
property specifically named in the conveyance had been
sold, and the proceeds properly applied by the trustee,
there remained unpaid about $1,200 of the secured
debts.    The deed contained no provision with respect
to the possession or increase of the property while
the trust should continue, and there was no agree-
ment between the parties concerned as to either.
Reaves, the maker, however, retained the posses-
sion of all the property until it was needed by the
trustee for sale, and of some of the horses until
this action was brought to recover them.

Among the live stock conveyed was a roan mare,

which Reaves, of his own motion, and without con-
sultation with the trustee, bred to a jack soon after
the deed of trust was executed. About the time
the trust matured, the mare foaled a mule colt,
which is the animal now in controversy in this case.
The dam and foal ran together until weaning time,
both in the possession of Reaves, and the mule was
retained by Reaves until June, 1893, when this suit
was commenced by the trustee for its recovery.
Upon these facts, is the mule the absolute property
of Reaves, as ruled by the Circuit Judge, or does
it belong to Ellis, as trustee?

Perhaps no rule of property is more general or
just than that the offspring of a domestic animal
belongs to the owner of the dam or mother. 2
Bl. Com., 390; 3 Lawson on Rights, Rem., & Pr.,
Sec. 1370; *Tyson* v. *Simpson,* 2 Haywood (N. C.),
147.

The ownership of mortgaged property or of prop-
erty conveyed in trust, is divided. Neither the
mortgagor nor the mortgagee, the maker nor the
trustee, is the full and complete owner; each has
an interest. In this State the legal title to such
property passes at once to the mortgagee or trustee,
and he becomes entitled to immediate possession,
unless otherwise provided in the deed. *Bank* v.
*Ewing,* 12 Lea, 600.

The conveyee, in such a case, takes the property,
in all of its parts and elements, so far as required
for the purposes of the conveyance, while the con-

veyor, if the property be personalty, is left only the right to reclaim it by payment of the secured debts before foreclosure, or to receive the residue, if any, after foreclosure; and, if the property be realty, he has the additional right of redemption after foreclosure, unless that right is cut off by the terms of the conveyance. So long as the secured debts remain unpaid, in whole or in part, the title of the conveyee is paramount, and that of the conveyor is subordinate. As against the debts, the conveyor can assert no right or title.

Such, unquestionably, were the respective interests of Ellis and Reaves in the roan mare, whose foal is the subject matter of this litigation; and that such are their respective interests in the foal itself follows, logically, from the principle that the offspring of a domestic animal belongs to the owner of the dam or mother.

Thus, by the application of plain principles, the controversy is resolved in favor of Ellis, the trustee.

It matters not that the mare was bred by the maker after the execution of the deed of trust; for, in such case, as well as if she had been previously bred, the title of the foal would follow the title of the dam without variation, in the absence of some provision or agreement to the contrary. Since the whole legal title and right to immediate possession of the mare, with all of her powers and elements of value—her brood bearing capacity with the rest —passed to the trustee, without qualification or res-

ervation, the legal *status* of the offspring would be the same in either case. The title of the foal is separable from that of the dam only by some provision, agreement, or contract, made for the purpose of disuniting them. If Reaves incurred liability for the season of the mare, the fee might be a prior charge, under the statute, upon the foal; but that would be equally true if the service had occurred before the deed of trust was made. *Sims* v. *Bradford*, 12 Lea, 434.

The text-writers, with great unanimity, support our view upon the main question.

Jones says: "Under the rule that the incident follows the principal, a mortgage of domestic animals covers the increase of such animals, though it is silent as to such increase; and it is not incumbent upon the mortgagee to take and hold the property as against a purchaser of such increase." Jones on Chat. Mort. (4th Ed.), Sec. 149.

Cobbey says: "The general rule of law is that the offspring or increase of female animals, when they come into visible existence, and are endowed with independent life, vest under the same title or ownership their dam was subject to at the time they were brought forth.      *      *      *      The offspring of mortgaged animals which are born after the making of the mortgage, are subject to the lien of such incumbrance.      *      *      *      Under the rule that the incident follows the principal, a mortgage

of a female animal covers her increase." Cobbey on Chat. Mort., Sec. 366.

Boone says: "A mortgage of chattels covers accession thereto. * * * So, it has been held that the young of animals under mortgage are subject to the mortgage." Boone on Mort., Sec. 244.

Other authors announce the same doctrine in similar phraseology. "A mortgage of a domestic animal will cover its increase." 3 Lawson on Rights, Rem., & Pr., Sec. 1370. "Where live stock is mortgaged, its natural increase and produce become subject to the mortgage." 2 Hilliard on Mort., 205. "Where live stock is mortgaged, the natural increase and produce of the stock also become subject to the mortgage." 3 Am. & Eng. Enc. Law, 186. "And, on the same principle, it is held that a mortgage of domestic animals covers their increase." Tiedeman on Sales, Sec. 231.

The foregoing quotations from text-writers are abundantly sustained by the adjudged cases. During the period of negro slavery in this country, the principle that the title of the offspring follows the title of the mother was generally, if not universally, applied in cases where children were born to female slaves while under mortgage. *Hughes* v. *Graves*, 1 Littell, 317; *Evans et al.* v. *Meniken*, 8 Gill & Johnson, 39; *Fowler* v. *Merrill*, 11 How., 396.

The same principle has been either applied, or recognized as applicable, to the increase of mortgaged domestic animals, in each of the following cases:

*Forman* v. *Proctor*, 9 B. Mon., 126; *Cohoon* v. *Miers*, 67 Md., 573; *Meyer Bros.* v. *Cook*, 85 Ala., 417; *Dyer* v. *The State*, 88 Ala., 225; *Rogers* v. *Highland*, 69 Iowa, 504 (S. C., 58 Am. R., 230); *Darling* v. *Wilson*, 60 N. H., 59 (S. C., 49 Am. R., 306); *Funk* v. *Paul*, 64 Wis., 35 (S. C., 54 Am. R., 578); *Kellogg* v. *Lonely*, 46 Mich., 131 (S. C., 41 Am. R., 153). *Boggs* v. *Starkey*, 13 Neb., 400, seems to be in conflict; but we have found no other case that is so.

It was decided in the two cases cited from New Hampshire and Wisconsin, and indicated in those cited from Iowa and Michigan, that the title of the mortgagee to the offspring of mortgaged animals, though at all times superior to that of the mortgagor, would not prevail against one in the position of an innocent purchaser from the mortgagor in possession during the period of nurture only. Jones and Cobbey take the same view. Jones on Chat. Mort., Sec. 149; Cobbey on Chat. Mort., Sec. 368. A contrary opinion was expressed in the 85 Alabama case cited above.

That question, however, does not arise in this case, the controversy here being wholly between the maker of the deed of trust and the trustee.

None of the cases cited make any distinction between the case in which the animal was bred before the execution of the mortgage and that in which it was bred subsequently. In most of them, it is true, the females were, in fact, pregnant at the

time the mortgage was made; but in none of them do the Courts attach any importance to that circumstance. On the contrary, the decision in each of those cases was based upon the legal proposition that the title of the offspring follows the title of the dam or mother—*partus sequitur ventrem.*

The only case we have been able to find in which the time of conception has been treated as of any moment in determining the ownership of young animals born of mortgaged females, is that of *Thrope Bros.* v. *Cowles,* 55 Iowa, 409. There the trial Judge instructed the jury that the mortgagee was not entitled to young animals so born, unless he should prove one of two facts: First, that they were conceived prior to the date of the mortgage; or, second, that, after that date, the mortgagee had open possession and control of the mortgaged females and their increase. The Supreme Court said: "No exception was taken, or objection is made, by either party to this instruction. It must be regarded as presenting the law of this case." Whether it would have been so "regarded" if challenged does not appear. No reason is given nor authority cited in its support. Cobbey incorporates the substance of that instruction into his text as an independent proposition, and cites that case, but none other, to support it. Cobbey on Chat. Mort., Sec. 367.

Not only does that case stand alone, but it seems to us to be without any sound reason to sustain it.

Moreover, the controversy there was between the mortgagees and attaching creditors of the mortgagor, and not between the mortgagees and mortgagor. Had the controversy been between the original parties, as in the present case, the Court would, no doubt, have ruled differently.

Besides the numerous authorities already cited in support of our conclusion in this case, it is fully sustained by the unreported case of *Latta* v. *Fowlkes*, decided by this Court, at Jackson, in April, 1883. In that case H. B. Fowlkes conveyed a brood mare and other property to S. R. Latta, trustee, to secure certain debts. The maker of the deed remained in possession of the mare for some time, and she gave birth to a colt. Supposing the colt to belong to him, he conveyed it, by another deed of trust, for the benefit of other creditors, who had no knowledge that it was the foal of the mare conveyed to Latta. Those other creditors sold the colt to Arthur Fowlkes, who knew of the deed to Latta and of the fact that it was the foal of the mare therein conveyed.

Latta did not know that the mare conveyed to him had dropped a colt until it was about four years old. Soon after obtaining that information, he sued in replevin to recover it from Arthur Fowlkes, the purchaser. This Court held that "the foal followed the condition of the dam," and that "the trust attached to it." The mare was in foal

at the time she was conveyed to Latta, but that fact cut no figure in the decision of the case.

Reverse, and enter judgment in favor of Ellis, trustee.