[Sac. No. 18.    Department One.—March 31, 1896.]

## J. E. SHOOBERT ET AL., APPELLANTS, *v.* ANTONIO MANUEL DE MOTTA, RESPONDENT.

CHATTEL MORTGAGE—DOMESTIC ANIMALS—TITLE TO OFFSPRING.—The rule that a chattel mortgage of domestic animals extends to the increase of the animals during the life of the mortgage, whether the terms of the mortgage includes such increase or not, can only apply where the mortgage passes title to the property mortgaged. It does not apply in this state under the provisions of the Civil Code by which the mortgagor is not divested of the title to the mortgaged property, by the execution of the chattel mortgage, but still remains its owner, while the

mortgagee has only a lien thereon, but the mortgagor, who retains the possession of the mortgaged property, is entitled to whatever income or profit may be derived from the use of the property, and is the owner of the offspring or increase of domestic animals mortgaged, which are begotten and born after the execution of the mortgage, and prior to its foreclosure.

APPEAL from a judgment of the Superior Court of Tulare County and from an order denying a new trial. W. W. CROSS, Judge.

*Dixon L. Phillips,* and *Robert Harrison,* for Appellants.

The thirteen hundred head of lambs in controversy, being the natural increase of the band of sheep described in plaintiffs' mortgage, were, in law, mortgaged to the plaintiff. (1 Cobbey on Chattel Mortgages, secs. 365, 366; 3 Am. & Eng. Ency. of Law, 186; *Arkansas Cattle Co.* v. *Mann,* 130 U. S. 78; *Meyer* v. *Cook,* 85 Ala. 417; *Dyer* v. *State,* 88 Ala. 225; *Cahoon* v. *Miers,* 67 Md. 573; *Forman* v. *Proctor,* 9 B. Mon. 124; *McCarty* v. *Blevins,* 5 Yerg. 195; 26 Am. Dec. 262; *Evans* v. *Merriken,* 8 Gill & J. 39; *Fonville* v. *Casey,* 1 Murph. 389; 4 Am. Dec. 559; *First Nat. Bank* v. *Western etc. Co.,* 86 Tex. 636; *Edmonston* v. *Wilson,* 49 Mo. App. 491; Jones on Chattel Mortgages, secs. 149, 150; Civ. Code, sec. 2955.)

*Bradley & Farnsworth,* for Respondent.

The lambs in question were not included in the property mortgaged, because they were conceived at least two months after the execution of the mortgage; also because, under our statute, the mortgage must expressly so covenant, in order to include the increase when that is the intention. (Cobbey on Chattel Mortgages, sec. 365; Jones on Chattel Mortgages, sec. 150; *Thorpe* v. *Cowles,* 55 Iowa, 408; Civ. Code, sec. 2955.)

HARRISON, J.—June 22, 1893, one Cascalia executed a mortgage to the plaintiffs' assignor upon a band of sheep which were then in Kings county, consisting of seventeen hundred ewes and ten hundred and fifty lambs. The sheep were afterward removed to Tulare county,

and in August, 1893, while they were in Tulare county, bucks were put with the ewes, and during the months of January and February, 1894, there were born, as the offspring of the ewes, thirteen hundred .lambs. The court finds that the period of gestation in the case of sheep is about five months. April 18, 1894, Cascalia, in consideration of an indebtedness from him to the defendant, executed to the defendant a bill of sale of these thirteen hundred lambs, and on the 21st of April the lambs were delivered to the defendant, and taken away by him. The plaintiffs brought the present action to recover the possession of the lambs or their value. Judgment was rendered in favor of the defendant, and the plaintiffs have appealed.

It has been held in some states that the lien of a mortgage of domestic animals extends to the increase of the animals during the life of the mortgage, whether the terms of the mortgage include such increase or not, and, following these decisions, such a rule is stated in text-books upon chattel mortgages. It will be found, however, upon examination of these cases, that the decisions therein are based upon the principle of the common law, which was in force in those states, that by the mortgage the mortgagee is vested with the title to the mortgaged property, and becomes the owner thereof; and that in the case of domestic animals, applying another rule of both the common and the civil law, that "the brood belongs to the owner of the dam or mother—*partus sequitur ventrem*" (2 Blackstone's Commentaries, 390), he thereby becomes the owner of such increase, and, being the owner, his title in any action at law must prevail. The earliest application of this rule was in the case of a mortgage of a female slave (*Hughes* v. *Graves*, 1 Litt. 317), which was decided in Kentucky in 1822, and was afterward followed in Maryland in 1836, in the case of *Evans* v. *Merriken*, 8 Gill & J. 39, which also involved the offspring of a female slave which had been mortgaged; and these cases are cited as the authority upon which cases involving the same ques-

tion have been decided in other states—in some instances referring also to the principle upon which the rule rests, and in others merely referring to the cases as an authority: (*Cahoon* v. *Miers*, 67 Md. 573; *Gundy* v. *Biteler*, 6 Ill. App. 510; *Ellis* v. *Reaves*, 94 Tenn. 210.) The rule has also been stated in many other cases in which the question was neither involved nor decided (*Kellogg* v. *Lovely*, 46 Mich. 131; 41 Am. Rep. 151; *McCarty* v. *Blevins*, 5 Yerg. 195; 26 Am. Dec. 262; *Gans* v. *Williams*, 62 Ala. 41); and there is still another line of decisions in which it has been sought to uphold the propriety of the rule by holding that the increase which was in gestation at the execution of the mortgage was inferentially included therein, as a part of the mortgaged property. (*Funk* v. *Paul*, 64 Wis. 35; 54 Am. Rep. 576; *Rogers* v. *Hyland*, 69 Iowa, 504; 58 Am. Rep. 230; *Edmonston* v. *Wilson*, 49 Mo. App. 491.) Another line of decisions limits this application of the rule, by holding that the increase is subject to the lien of the mortgage only for so long a time as the young are in a state of nurture from the mother. (*Rogers* v. *Gage*, 59 Mo. App. 107; *Darling* v. *Wilson*, 60 N. H. 59; 49 Am. Rep. 305; *Forman* v. *Proctor*, 9 B. Mon. 124.) The want of logical sequence in this limitation has been felt by the courts, and some of them have sought to place their decision upon the fact that, while the young were following the mother, a purchaser from the mortgagor had notice by that fact that it was her offspring, and subject to the mortgage, and was thus prevented from claiming to be a purchaser in good faith. Placing the decision on this ground is, however, necessarily a repudiation of the principle upon which all the above cases rest, for, if the mortgagee is in fact the owner of the increase, the question of good faith in a purchase from the mortgagor is immaterial.

Prior to 1873 the giving of a chattel mortgage in this state vested the mortgagee with the title to the property mortgaged (*Heyland* v. *Badger*, 35 Cal. 404), and, while this rule of law prevailed, the foregoing decisions would

have been applicable.  The Civil Code, however, went into effect at the beginning of that year, and under its provisions the mortgagor is not, by the execution of the chattel mortgage, divested of his title to the property, but still remains its owner, while the mortgagee has only a lien thereon.  (Civ. Code, sec. 2888; *Bank of Ukiah* v. *Moore*, 106 Cal. 673.)  Consequently, the foregoing decisions cannot be regarded as having authoritative force, but the rights of the parties must be determined upon the general principles controlling the relations between a mortgagor and mortgagee.  In the absence of any express agreement upon the subject, the lien created by a mortgage is limited to the property which is described in the mortgage, and does not include other property of the same character which the mortgagor may have afterward acquired and placed with the mortgaged property.  (Jones on Chattel Mortgages, secs. 138, 154.)  If the mortgagor retains the possession of the mortgaged property, he is at liberty to deal with and use it as its owner, and whatever income or profit may be derived from such use belongs to him, and not to the mortgagee.  (See *Simpson* v. *Ferguson*, *ante*, p. 180.)  If, in the case of sheep, the use to which he puts the ewes is for breeding lambs, there can be no sufficient reason given why the lambs that are dropped by the ewes should belong to the mortgagee, any more than the wool which is sheared from their backs.  We are aware that the supreme court of Texas, in *First Nat. Bank* v. *Western Mortgage etc. Co.*, 86 Tex. 636, held that, although by the laws of that state the mortgagor of personal property remains the owner thereof after the execution of the mortgage, the foregoing decisions control the right of the mortgagee to the increase of domestic animals; but the opinion in which the decision is given merely states the proposition without presenting any reasoning in its support, and does not meet with our approval.

We are not called upon to determine in the present case whether, if the lambs in question had been in ges-

tation at the date of the mortgage, they would have been included as a part of the property mortgaged, but we hold that, inasmuch as they were begotten upon the ewes after the mortgage was executed, the mortgagee has no lien upon them, or right to their possession.

The conclusion thus reached renders it unnecessary to consider the rulings of the court upon the offer of the plaintiffs to show that the defendant had knowledge of the mortgage at the time he purchased the lambs.

The judgment and order are affirmed.

VAN FLEET, J., and GAROUTTE, J., concurred.