DEMERS, RESPONDENT, *v.* GRAHAM, SHERIFF, ET AL., DEFENDANTS. PRIDEAUX, APPELLANT.

(No. 2,476.)

(Submitted December 10, 1907.   Decided December 28, 1907.)

[93 Pac. 268.]

*Chattel Mortgages—Domestic Animals—Ownership of Increase.*

Chattel Mortgages—Liens—Title.
   1.  A chattel mortgage creates a lien only, and, therefore, does not pass title from the mortgagor to the mortgagee.
Same—Domestic Animals—Increase—Ownership.
   2.  A chattel mortgage upon cows, in which no mention was made of their increase, did not cover their calves, in gestation at the time of the execution of the mortgage but born prior to foreclosure.

*Appeal from District Court, Missoula County; F. C. Webster, Judge.*

ACTION by Alexander L. Demers against Davis Graham, sheriff, and others. From a judgment for plaintiff, defendant M. H. Prideaux appeals. Reversed and remanded.

*Mr. Harry H. Parsons,* for Appellant.

Citing: *Shoobert* v. *De Motta,* 112 Cal. 215, 53 Am. St. Rep. 207, 44 Pac. 487; *Maier* v. *Freeman,* 112 Cal. 8, 53 Am. St. Rep. 151, 44 Pac. 357; *First Nat. Bank* v. *Ereca,* 116 Cal. 81, 58 Am. St. Rep. 133, 47 Pac. 926; *Alferitz* v. *Borgwardt,* 126 Cal. 205, 58 Pac. 460; *Alferitz* v. *Ingals,* 83 Fed. 964; *Hixon* v. *Hubbell,* 4 Okla. 224, 44 Pac. 222; *Knowles* v. *Ferguson,* 11 Or. 54, 240, 4 Pac. 126.

*Messrs. Marshall & Stiff,* for Respondent.

"Under the rule that the incident follows the principal, a mortgage of domestic animals covers the increase of such animals, though it is silent as to such increase." (Jones on Chattel Mortgages, sec. 149; *Rogers* v. *Highland,* 69 Iowa, 504, 58 Am. Rep. 230, 29 N. W. 429; *Darling* v. *Wilson,* 60 N. H. 59, 49 Am. Rep. 305; *Funk* v. *Paul,* 64 Wis. 35, 54 Am. Rep. 576, 24 N. W. 419; Lawson's Rights, Remedies and Practice, sec. 1370; *Pyeatt* v. *Powell,* 51 Fed. 551, 2 C. C. A. 367; *Dyer* v. *State,* 88 Ala. 225, 7 South. 267; *Gundy* v. *Biteler,* 6 Ill. App. 510; *Forman* v. *Proctor,* 48 Ky. 124; *First Nat. Bank* v. *Western Mtg. & Inv. Co.,* 86 Tex. 636, 26 S. W. 488; see, also, *Thorpe* v. *Cowles,* 55 Iowa, 408, 7 N. W. 677; *Maize* v. *Bowman,* 93 Ky. 205, 19 S. W. 589, 17 L. R. A. 81; *Dyer* v. *State,* 88 Ala. 225, 7 South. 267; *Forman* v. *Proctor,* 9 B. Mon. (Ky.) 124; *Rogers* v. *Highland,* 69 Iowa, 504, 58 Am. Rep. 230, 29 N. W. 429; *Kellogg* v. *Lovely,* 46 Mich. 131, 41 Am. Rep. 151, 8 N. W. 699; *Edmonston* v. *Wilson,* 49 Mo. App. 491; *Funk* v. *Paul,* 64 Wis. 35, 54 Am. Rep. 576, 24 N. W. 419; *Latta* v. *Fowlkes,* 94 Tenn. 219, 29 S. W. 124; *Darling* v. *Wilson,* 60 N. H. 59, 49 Am. Rep. 305.)

MR. JUSTICE SMITH delivered the opinion of the court.

The only question for determination in this case is, whether a chattel mortgage of certain cows covers their calves in gestation at the time the mortgage was executed, but born prior to foreclosure, there being no reference in the mortgage to the increase of the cows.

The defendant, Graham, holds in his possession, as sheriff of Missoula county, the sum of $609, the proceeds of the sale of eighty-seven calves, sold by him under a stipulation that he should hold the proceeds until the final determination of this action. The plaintiff claims the money by virtue of the fact that he held a chattel mortgage on the mothers of the calves at the time the young were born. The appellant, Prideaux, claims to be entitled to the sum by virtue of a sale of the calves to him by Sloan, the mortgagor, after the sheriff had seized but before he sold the same under plaintiff's mortgage. Prideaux set forth in his answer the respective claims of the parties, as above recited. The district court of Missoula county sustained a general demurrer to the answer, and, in default of further pleading by Prideaux, entered a judgment in favor of the plaintiff and against the defendant Graham, as sheriff, for the sum of money in dispute. From that judgment Prideaux has appealed.

The law is well settled in this state that a chattel mortgage only creates a lien and does not pass title from the mortgagor to the mortgagee. (*Bennett Bros. Co.* v. *Fitchett,* 24 Mont. 457-469, 62 Pac. 780; *Mueller* v. *Renkes,* 31 Mont. 100, 77 Pac. 512.) Such lien transfers no title. (Civ. Code, sec. 3750.) The question of the extent of the lien created, in those jurisdictions where no title passes, has been a fruitful source of litigation for many years. The immediate question that we are to decide has never been before this court, and we feel, therefore, that in the determination of the same we should point out what seem to us to be the principles involved, and not merely cite the precedents of the courts.

The supreme court of California, in the case of *Shoobert* v. *De Motta,* 112 Cal. 215, 53 Am. St. Rep. 207, 44 Pac. 487, took occasion to examine and differentiate the decisions on this subject in the following language: ''It has been held in some states that the lien of a mortgage of domestic animals · extends to the increase of the animals during the life of the mortgage, whether the terms of the mortgage include such increase or not, and, following these decisions, such a rule is stated in text-books upon chattel mortgages. It will be found, however, upon examination of these cases, that the decisions. therein are based upon the principle of the common law, which was in force in those states, that by the mortgage the mortgagee is vested with the title to the mortgaged property, and becomes the owner thereof; and that in the case of domestic animals, applying another rule of both the common and the civil law, that 'the brood belongs to the owner of the dam or mother,— *partus sequitur ventrem'* (2 Blackstone's Commentaries, 390), he thereby becomes the owner of such increase, and, being the owner, his title in any action at law must prevail. The earliest application of this rule was in the case of a mortgage of a female slave (*Hughes* v. *Graves,* 1 Litt. 317), which was decided in Kentucky in 1822, and was afterward followed in Maryland in 1836, in the case of *Evans* v. *Merriken,* 8 Gill & J. 39, which also involved the offspring of a female slave which had been mortgaged; and these cases are cited as the authority upon which cases involving the same question have been decided in other states, in some instances referring also to the principle upon which the rule rests, and in others merely referring to the cases as an authority. (*Cahoon* v. *Miers,* 67 Md. 573, 11 Atl. 278; *Gundy* v. *Biteler,* 6 Ill. App. 510; *Ellis* v. *Reaves,* 94 Tenn. 210, 28 S. W. 1089.) The rule has also been stated in many other cases in which the question was neither involved nor decided (*Kellogg* v. *Lovely,* 46 Mich. 131, 41 Am. Rep. 151, 8 N. W. 699; *McCarty* v. *Blevins,* 5 Yerg. (Tenn.) 195, 26 Am. Dec. 262; *Gans* v. *Williams,* 62 Ala. 41) ; and there is still another line of decisions in which it has been sought to uphold the propriety of the

rule by holding that the increase which was in gestation at the execution of the mortgage was inferentially included therein as a part of the mortgaged property. (*Funk* v. *Paul,* 64 Wis. 35, 54 Am. Rep. 576, 24 N. W. 419; *Rogers* v. *Hyland,* 69 Iowa, 504, 58 Am. Rep. 230, 29 N. W. 429; *Edmonston* v. *Wilson,* 49 Mo. App. 491.) Another line of decisions limits this application of the rule by holding that the increase is subject to the lien of the mortgage only for so long a time as the young are in a state of nurture from the mother. (*Rogers* v. *Gage,* 59 Mo. App. 107; *Darling* v. *Wilson,* 60 N. H. 59, 49 Am. Rep. 305; *Forman* v. *Proctor,* 9 B. Mon. (Ky.) 124.) The want of logical sequence in this limitation has been felt by the courts, and some of them have sought to place their decision upon the fact that, while the young were following the mother, a purchaser from the mortgagor had notice by that fact that it was her offspring, and subject to the mortgage, and was thus prevented from claiming to be a purchaser in good faith. Placing the decision on this ground is, however, necessarily a repudiation of the principle upon which all the above cases rest, for, if the mortgagee is in fact the owner of the increase, the question of good faith in a purchaser from the mortgagor is immaterial.

"Prior to 1873 the giving of a chattel mortgage in this state vested the mortgagee with the title to the property mortgaged (*Heyland* v. *Badger,* 35 Cal. 404), and, while this rule of law prevailed, the foregoing decisions would have been applicable. The Civil Code, however, went into effect at the beginning of that year, and under its provisions the mortgagor is not, by the execution of the chattel mortgage, devested of his title to the property, but still remains its owner, while the mortgagee has only a lien thereon. (Civ. Code, sec. 2888; *Bank of Ukiah* v. *Moore,* 106 Cal. 673, 39 Pac. 1071.) Consequently, the foregoing decisions cannot be regarded as having authoritative force, but the rights of the parties must be determined upon the general principles controlling the relations between a mortgagor and mortgagee. In the absence of any express agreement upon the subject, the lien created by a mortgage is limited to the prop-

erty which is described in the mortgage, and does not include other property of the same character which the mortgagor may have afterward acquired and placed with the mortgaged property. (Jones on Chattel Mortgages, secs. 138, 154.) If the mortgagor retains the possession of the mortgaged property, he is at liberty to deal with and use it as its owner, and whatever income or profit may be derived from such use belongs to him, and not to the mortgagee. (See *Simpson* v. *Ferguson,* 112 Cal. 180, 53 Am. St. Rep. 201, 40 Pac. 104, 44 Pac. 484.) If, in the case of sheep, the use to which he puts the ewes is for breeding lambs, there can be no sufficient reason given why the lambs that are dropped by the ewes should belong to the mortgagee, any more than the wool which is sheared from their backs. We are aware that the supreme court of Texas, in *First Nat. Bank* v. *Western Mortgage etc. Co.,* 86 Tex. 636, 26 S. W. 488, held that, although by the laws of that state the mortgagor of personal property remains the owner thereof after the execution of the mortgage, the foregoing decisions control the right of the mortgagee to the increase of domestic animals; but the opinion in which the decision is given merely states the proposition without presenting any reasoning in its support, and does not meet with our approval. We are not called upon to determine in the present case whether, if the lambs in question had been in gestation at the date of the mortgage, they would have been included as a part of the property mortgaged, but we hold that, inasmuch as they were begotten upon the ewes after the mortgage was executed, the mortgagee has no lien upon them, or right to their possession.''

This case was supplemented by the later case of *First Nat. Bank* v. *Erreca,* 116 Cal. 81, 58 Am. St. Rep. 133, 47 Pac. 926, wherein the facts relative to the time at which the offspring were begotten are like those in the case at bar. In that case the court said: ''The present case presents a question which was not involved or decided in that case, i. e., whether the lien of the mortgage includes lambs in gestation at its date, but upon the principles of that case it must be held that they are not so

included. As the lien of the mortgage extends only to the property described therein, and as the mortgagor remains the owner of the property mortgaged, he has an unrestricted right to sell or dispose of its fruit or increase. His right to dispose of lambs in gestation or wool upon the backs of the sheep at the date of the mortgage is the same as would be his right to dispose of oranges which were on the trees, or wheat which was in the ground or standing in the field when a mortgage of the land was made.''

We think these cases correctly state the rule of law, and we adopt the conclusions reached, together with the reasons assigned therefor.

Section 3893 of the Civil Code reads as follows: ''The increase of property pledged is pledged with the property.'' Counsel for appellant contends that this legislative language ought to be interpreted as showing an intention to lay down a different rule as to pledges from that pertaining to chattel mortgages. We are inclined to think there is merit in the suggestion.

On the part of the respondent our attention has been directed to section 3815 of the Civil Code, reading as follows: ''A mortgage is a lien upon everything that would pass by a grant of the property.'' It is contended that the foregoing language, applied to this case, means that the lien of the mortgage attached to the calves in question. This section is found in the Code under the following article-heading: ''Mortgages in General.'' It applies, therefore, to both real estate and chattel mortgages. There is this analogy between real estate and chattel mortgages, that both are simply liens. (*Hull* v. *Diehl,* 21 Mont. 71, 52 Pac. 782.) A mortgage does not entitle the mortgagee to the possession of the property, unless authorized by the express terms of the mortgage. (Civ. Code, sec. 3816.)

While in possession of mortgaged real property the mortgagor may collect and appropriate to his own use the rents and profits thereof. (20 Am. & Eng. Ency. of Law, 2d ed., p. 979, and cases cited.) Growing crops may be the subject of chattel mort-

gage, even though the owner of the same also owns the land upon which they are growing. And this rule prevails, even in those jurisdictions where growing crops are part of the realty. (8 Am. & Eng. Ency. of Law, 2d ed., 311; Civ. Code, sec. 3876.) Now, it will not be contended that a grant of the land would not pass title to a growing crop. So, too, the sale of a cow would undoubtedly carry with it her unborn calf; but we cannot assent to the conclusion that because thereof, a chattel mortgage describing the cow only would also create a lien upon her offspring.

The statute referred to by the learned counsel is comprehensive, and the construction to be placed upon it should be reached only after full consideration in any particular case in which it may be invoked. We do not think it wise or necessary in this case to construe it further than to hold that it does not apply to the natural increase of domestic animals by procreation. We think, if the legislature had intended that the lien of a chattel mortgage describing particular animals should attach to their young thereafter to be born, it would have said so plainly, as it did in the case of a pledge. In the absence of such a declaration it seems reasonable to hold that because the mortgage is simply a lien passing no title, the mortgagor in possession has the right to deal with the property as his own, and in the case of domestic animals may dispose of the young not mentioned in the mortgage as he sees fit. This construction leaves to the mortgagee the security described in the mortgage, and does away with the confusion that experience has taught invariably follows the adoption of any other rule. If, in cases like this, it be intended to include the offspring, the mortgage should so state.

The judgment of the district court of Missoula county is reversed and the cause is remanded, with instructions to vacate the order sustaining the demurrer to the appellant's answer, and to enter an order overruling the same.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.