McNAUGHT, Respondent, v. WEYH, et al., Appellants.

No. 9219.
Submitted January 13, 1954. Decided July 30, 1954.
Rehearing Denied November 22, 1954.
276 Pac. (2d) 491.

Messrs. McCabe & McCabe, Mr. Ernest J. McCabe, Jr., Great Falls, for appellants.

Messrs. Hall, Alexander & Burton, Mr. H. C. Hall, Great Falls, Messrs. Walchli, Korn & Warden, Kalispell, for respondent.

Mr. Ernest J. McCabe, Jr., and Mr. H. C. Hall argued orally.

MR. JUSTICE ANDERSON:

The plaintiff, Joseph E. McNaught, filed an amended complaint on July 10, 1950, wherein it is alleged that Homer P. Butts borrowed $5,000 from him in order that he, Butts, may purchase an undivided one-half interest in the National Bar at Kalispell, Montana. Butts executed and delivered a promissory note to plaintiff in the sum of $5,000 bearing five percent interest and due April 20, 1951. To secure payment of the note Butts executed and delivered a chattel mortgage to plaintiff covering an undivided one-half interest in the National Bar and the beer and liquor licenses for said bar. The chattel mortgage purported to

give security not only for the stock in trade, fixtures and so forth then at the National Bar, but also after acquired property connected with its operation. The chattel mortgage expressly provided that it was subject to a contract for sale dated November 12, 1947, between H. H. Selfridge and T. S. McCahan and Cora McCahan.

The evidence makes it apparent that Cora McCahan and T. S. McCahan purchased the National Bar from H. H. Selfridge and entered into the contract for sale on November 12, 1947, at which time $9,048 was paid Selfridge and a balance of $21,148 was to be paid in monthly installments, the title to the property to remain in Selfridge until full payment was made.

It further appears that T. S. McCahan and Cora McCahan operated the business connected with the National Bar as partners from and after taking it over from Selfridge and that it was the interest of Cora McCahan that was purchased with the $5,000 borrowed from the plaintiff by Butts.

From April 20, 1948, to July 15, 1948, T. S. McCahan and Butts operated the bar as partners and the beer and liquor licenses were issued by the State of Montana to them as such. On July 15, 1948, Butts died. T. S. McCahan thereupon assumed the operation of the business and on August 5, 1948, all of the personal property used in the partnership business between T. S. McCahan and Homer Butts, deceased, was completely destroyed by fire.

The partnership property was insured against fire in the amount of $26,104.60, $6,000 of which was carried by Selfridge in his own name and the other policies apparently ran to Selfridge to secure the unpaid balance on the contract of sale.

Resulting from the payment of money received from the fire insurance policies, and by written satisfaction dated February 24, 1949, the interest of Selfridge in the contract for sale of the National Bar was satisfied as of November 1, 1948. The amount due on the contract for sale at the time was $19,487.60.

Thereafter and on November 1, 1948, T. S. McCahan and Cora McCahan gave Selfridge a chattel mortgage on personal property-

including a beer and a liquor license which licenses were then in the name of McCahan and Butts, then in place in that certain building known as the Stockman's Bar (a wholly new and different place than the National Bar), said mortgage to secure payment of a note for $19,587.60 payable in 48 monthly instalments. Thereafter Selfridge died and F. H. Haddow was appointed administrator, with the will annexed, of his estate. F. H. Haddow, as administrator of the estate of Selfridge, deceased, gave a satisfaction for the chattel mortgage above mentioned. Russel E. Mosbarger was at the time of trial the holder of a chattel mortgage dated December 26, 1950, covering the same property released by the satisfaction from Haddow which chattel mortgage secures a note signed by T. S. McCahan and Cora McCahan in the amount of $20,000.

Subsequent to the death of Homer P. Butts, letters of administration were granted to F. H. Haddow for the purposes of administering the affairs of his estate. The usual probate proceedings were carried on and a first account of the administrator was filed with the clerk of the district court. Attached to this account is a copy of ''Account of Surviving Partner'' signed by T. S. McCahan.

Without setting out the first account of the administrator and the account of the surviving partner in length, it suffices to say that events leading up to the time the account was filed are clearly set out verbatim, and little if any misunderstanding on the part of interested persons could be had from them. The account sets out clearly the proceeds from insurance, the disposition thereof, and the value of the beer and liquor licenses was left undetermined. As will be seen, all of the account was approved by the court, save the disposition of the licenses and a few small items which are of no importance here. The accounting by the surviving partner, T. S. McCahan, points out the assets and liabilities of the National Bar as of August 5, 1948, the day the partnership property was destroyed by fire, in which account it is shown that the respective interests of the partners were $1,719.01 surviving partner, and $1,719.02 deceased partner, Homer P. Butts.

It is also apparent that the $1,719.02 was turned over by the surviving partner to Haddow, administrator of Butts, deceased.

On April 12, 1949, the plaintiff in this action, Joseph E. McNaught, filed objections to the first account of F. H. Haddow, administrator, and to account of surviving partner, made a part thereof. Specifically the objections, of interest here, are to the surviving partner's account and are as follows:

"Among the assets of said co-partnership there were at the time of the death of said Homer P. Butts, and there are at the present time the following:

"One (1) Retail Beer License issued to said co-partners by the Montana Liquor Control Board of a value of $5,000.00.

"One (1) Retail Liquor License issued to said co-partners by the Montana Liquor Control Board of a value of $7,500.00.

"The said account wholly fails to list the above licenses or either thereof * * *."

Here it should be noted that the administrator's account lists these items.

The objections contain a prayer that the court order the surviving partner to dispose of said licenses and account be made therefor and that the surviving partner furnish a bond as provided for by R. C. M. 1947, sec. 91-3205.

After a hearing on the first account the court on June 1, 1949, made an order set out in part as follows:

"It is hereby ordered, that said account be, and is hereby approved, except as to the item of September 21, 1948, for advance to J. B. O'Flynn in the sum of $40.00, which item is disapproved; and excepting also that the account of T. S. McCahan, surviving partner, should show as assets of the co-partnership between said T. S. McCahan and said Homer P. Butts, deceased, the following:

"One retail beer license issued to said co-partners by the Montana Liquor Control Board;

"One retail liquor license issued to said co-partners by the Montana Liquor Control Board;

"and it is ordered that said surviving partner, T. S. McCahan, account to said administrator for said licenses.

"The court having heretofore required the said surviving partner to furnish a bond, and having recently extended the time for furnishing said bond, and it appearing possibly said bond may not be furnished, the Court doubts the advisability at this time of ordering said surviving partner to sell said licenses, and withholds action on the objector's request for an order requiring the surviving partner to sell such licenses."

It is apparent from the objections filed by plaintiff that his remedy on April 12, 1949, to recover his $5,000 was directed at the estate of Homer Butts, deceased, and based on the theory that the surviving partner had not made a proper accounting and therefore the estate was entitled to a greater portion of the partnership assets. Plaintiff's objections were apparently made notwithstanding the fact that he had not filed a claim against the estate and was not a proper objector.

Following these events Eugene A. McCabe was substituted as administrator for F. H. Haddow for the Homer P. Butts estate.

According to plaintiff's exhibit No. 14, T. S. McCahan pursuant to an order of April 24, 1950, sold the retail beer and liquor licenses belonging to the co-partnership and thereupon made a return of sale to the court and a final account of surviving partner. Whether or not the district court took any action upon these presentations is not shown by the record here.

The record shows that the retail beer and liquor licenses were issued by the State of Montana to T. S. McCahan and Homer P. Butts on June 19, 1948, before the destruction of the property, and that on November 23, 1948, after the destruction of the property and and after the death of Homer P. Butts, the said licenses were transferred in the name of both partners to a new location in Kalispell, Montana. T. S. McCahan gave the reason for this transfer, which is undisputed, as follows: "A. I went down to the Liquor Board to get the license. They said they couldn't issue me a license in my own name, would have to have Mr. Butts' name on it. I said to the lady, 'Mr. Butts is dead.' She said,

'That is the way they said to do it; you will have to have his name on it.' Q. Did you at that time inform the members of the Liquor Board that you were going to do business at the new building known as the Stockman's Bar instead of the old place known as the National Bar? A. That's right. Q. Then, in face of that information, they then issued this approval? A. That's right.''

The complaint in this action is based upon two claims, one being that T. S. McCahan wrongfully and unlawfully converted the proceeds of the insurance checks (paid for the loss by fire of the McCahan-Butts co-partnership property) to his own use and benefit and in doing so purchased furniture, fixtures, stock, etc., and entered into the operation of a business known as the Stockman's Bar in Kalispell, Montana; and two being that since the death of Butts, McCahan as surviving partner unlawfully converted to his own use and benefit the beer and liquor licenses belonging to the McCahan-Butts partnership. The plaintiff thus claims that his mortgage extends to and covers an undivided one-half interest in all the furniture, fixtures, etc., and the beer and liquor licenses in said Stockman's Bar and is a first lien upon same, and that he is entitled to a decree of foreclosure and attorney's fees.

The district court made certain findings of fact and among other things found that Butts purchased a one-half interest in the business and property known as the National Bar subject to the conditional sales contract of H. H. Selfridge, except as to additions, renewals and replacements of such property made subsequent to November 12, 1947, and that in turn the same property in which Butts had this interest was subject to a chattel mortgage held by plaintiff which chattel mortgage included also all property of like kind, thereafter and during the life of that mortgage, acquired by mortgagor by either increase or purchase or by exchange or substitution for property therein described.

Then the lower court went on to make further findings to the effect that after Butts died, McCahan, instead of proceeding with liquidation of the partnership and its assets, continued to operate the partnership and that thereafter all of the property

owned by said partnership and covered by and described in plaintiff's mortgage including additions, substitutions, renewals and replacements, was destroyed by fire; that the property of the partnership was covered by insurance and upon receipt of the insurance monies, T. S. McCahan used $19,587.60 of the proceeds of said insurance money for the purpose of replacing property of the copartnership lost in the fire.

The court further found that for the purpose of conducting the business T. S. McCahan converted and made use of the beer and liquor licenses of the partnership until on or about the 22nd day of May 1950, upon which date T. S. McCahan purported to sell the beer and liquor licenses to his wife Cora McCahan.

From these and other findings made, the court held that all and singular the mortgaged property described in the amended complaint, or so much thereof as may be necessary, be sold to satisfy plantiff's chattel mortgage and pay attorney's fees, costs, etc.; that plaintiff is entitled to a judgment and decree of foreclosure in his favor against Eugene McCabe as administrator of the estate of Homer P. Butts, deceased, T. S. McCahan and Cora McCahan.

From the judgment defendants T. S. McCahan and Cora McCahan appeal.

A further motion to dismiss the appeal by respondent was made on the theory that Eugene McCabe, as administrator of the estate of Homer P. Butts, deceased, is a party whose interests would be adversely affected by a reversal of the judgment made by the lower court and that no service of notice of appeal was made upon him or upon his counsel.

At this point it is interesting to note that at the end of plaintiff's case, counsel for Eugene McCabe, administrator of the estate of Homer P. Butts, made a motion that the action be dismissed as against him. After objection by plaintiff's counsel to the motion, the court overruled the objection made and apparently thereby sustained the motion. Notwithstanding this, the court decreed against the administrator of Butts, deceased. However, in decreeing against him the district court held as follows: "That

plaintiff is entitled to have all of the defendants forever barred from asserting any rights, title, interest or lien in or upon said property.'' Obviously even if we overlook the inconsistency in the proceeding below, no adverse result would follow from a reversal of the judgment here insofar as the administrator of the Butts' estate is concerned, as is contemplated by R. C. M. 1947, sec. 93-8005.

This court said in the case of In re Baxter's Estate, 94 Mont. 257, 22 Pac. (2d) 182, 186 : ''An 'adverse party,' within the meaning of the statute (Rev. Codes 1921, sec. 9733 [R. C. M. 1947, sec. 93-8005]) [upon whom it is necessary to serve notice of appeal], is a party to a judgment whose rights may be *injuriously* affected by its reversal or modification, *or one who has an interest in opposing the object sought to be accomplished by the appeal.''* Emphasis supplied. *Hence one who would be benefited by a reversal is not an adverse party.*

In the instant case the administrator of the Butts' estate could not be injured, nor would he have an interest in opposing the appeal.

R. C. M. 1947, sec. 63-503 : ''Causes of dissolution. Dissolution is caused : * * * By the death of any partner''.

Under this section of the Code it is obvious that the partnership of T. S. McCahan and Homer P. Butts ended upon the death of Butts on July 15, 1948. Left remaining was the chore on the part of the surviving partner to wind up the affairs of the partnership and make his accounting accordingly. If the records in the probate proceedings of the estate of Homer P. Butts, deceased, and those records in connection with the efforts of T. S. McCahan, the surviving partner, mean anything at all, and we hold that they do, it is obvious that T. S. McCahan made his accounting of the partnership to the administrator of the Butts' estate upon a hearing by the court on the first account of the administrator, the accounting was approved except as to the sale of the beer and liquor licenses and as to these the court withheld action.

Thereafter, and by the order of the court deated April 24, 1950,

the doubt by the court was resolved as to the advisability of selling the licenses belonging to the partnership and pursuant to that order a sale was made of the licenses in question, and a return thereon was made to the court. Whether or not an objection was made to the return of sale or whether or not further proceedings in the probate of the Butts' estate were had does not appear in the record before us.

By language of the plaintiff found in his brief the following appears: "We do not contend * * * that the note and mortgage given by Butts became the personal obligation of McCahan merely because McCahan consented to the mortgage. We do contend * * * that * * * the lien is good as to Butts' interest and that McCahan, as surviving partner and trustee, is held responsible for such interest."

R. C. M. 1947, sec. 91-3205, provides for the duties of a surviving partner and the manner in which he shall settle up the affairs of the partnership. Because of the evidence in the record before us we hold that T. S. McCahan did everything that was required of him under this section and any delay in the disposal of the licenses, was brought about by the plaintiff and the lower court and subsequently such disposal was made.

In order that the lower court conclude what it did, it was necessary that all the proceedings before the court regarding the probate of the Butts' estate and the affairs having to do with the winding up of the partnership, be overlooked as they apparently were. Plus the fact that it was necessary that the court overlook the payment of the balance remaining due on the purchase contract between Selfridge and T. S. McCahan and Cora McCahan and the subsequent loan by Selfridge to the McCahans. These later facts lurk in the record and are undisputed by the plaintiff and cannot be ignored.

The judgment of the lower court is reversed with directions to dismiss the action.

MR. JUSTICE ANGSTMAN concurs.

MR. JUSTICE FREEBOURN (specially concurring):

I concur in the result reached for the following reasons.

McNaught brought this action to foreclose a chattel mortgage, which was given by Butts on his half interest in the National Bar, its equipment and its liquor and beer licenses, to secure a loan of $5,000 made by McNaught to Butts.

Plaintiff's evidence shows the following facts. This chattel mortgage bound Butts, alone, and was secondary to a conditional bill of sale held by Selfridge, whereby he sold the National Bar to the McCahans. Mrs. McCahan sold her one-half interest in the National Bar, fixtures and liquor and beer licenses, to Butts on April 20, 1948. Butts died July 15, 1948. The National Bar and fixtures were destroyed by fire on August 5, 1948, the liquor and beer licenses standing in the names of McCahan and Butts being saved. Of $26,104.60 insurance money paid to cover fire loss, Selfridge received $19,587.60, as due him under his conditional bill of sale.

The first account, plaintiff's exhibit 10, of E. H. Haddow, administrator of the estate of Homer P. Butts, deceased, dated March 21, 1949, shows that among the claims presented was a "Note bearing 6% interest in Favor of Joseph E. McNaught, dated April 18, 1948. $5,000.00." This is the note evidencing the loan of $5,000 from McNaught to Butts and secured by the chattel mortgage.

The first account of Haddow contains McCahan's "accounting of surviving partner." This account showed the reception of the insurance money, its disposition, and showed the balance left, after paying Selfridge his $19,587.60, was used to pay off partnership debts and one-half of what remained, $1,719.02, went to Butts' estate.

McNaught made objection to the account of McCahan dated April 12, 1949, principally on the ground that "among the assets of said co-partnership there were at the time of death of said Homer P. Butts, and there are at the present time * * * one retail beer license * * * one retail liquor license * * * " and asked "that the surviving partner [McCahan] be required to sell and dispose of said retail beer and liquor licenses * * *".

The district court by order dated June 1, 1949, ordered McCahan to "account to said administrator for said licenses," and ordered their sale by order "dated the 24th day of April, 1950."

McCahan's "final account of surviving partner" and "return of sale" shows that McCahan, on June 12, 1950, after notice of sale of such liquor and beer licenses was published in the Great Falls Tribune and the Kalispell Daily Inter Lake, sold Butts' one-half interest in said licenses at public sale for $2,000 and that Butts' estate received its share of such $2,000.

McNaught having requested the sale of such beer and liquor licenses must be held to have consented to such sale, and therefore, any lien which he may have had on such licenses, by virtue of such chattel mortgage, was waived and extinguished.

In Luther v. Lee, 62 Mont. 174, 204 Pac. 365, 366, this court said: "Where the mortgagee expressly or impliedly consents to a sale of mortgaged property of the mortgagor, he thereby waives his lien * * *." See U. S. Nat. Bank v. Great Western Sugar Co., 60 Mont. 342, 199 Pac. 245; Swords v. Occident Elevator Co., 72 Mont. 189, 232 Pac. 189. The lien of a chattel mortgage is extinguished where the mortgagee consents to the sale of the mortgaged property. 10 Am. Jur., Chattel Mortgages, sec. 221, page 860.

Plaintiff's evidence failed to support the allegations of his amended complaint, dated July 10, 1951, which charged that McCahan "wrongfully and unlawfully converted" the fire insurance money amounting to $26,104.60 "to his own use and benefit."

When Butts died on July 15, 1948, the partnership between him and McCahan ended, R. C. M. 1947, sec. 63-901, providing "death * * * of a general partner dissolves the partnership * * *."

When the fire of August 5, 1948, destroyed the property (the National Bar), except the licenses, which was security for McNaught's chattel mortgage, McNaught's lien on such property was lost. R. C. M. 1947, sec. 52-101, provides that a "mortgage is a contract by which specific property is hpyothecated for the performance of an act, without the necessity of a change of pos-

session", while "a lien may be lost by operation of law, such as by the destruction of the property on which it exists * * *." 53 C. J. S., Liens, sec. 17, page 862.

"In the absence of any express agreement upon the subject, the lien created by a mortgage is limited to the property which is described in the mortgage * * *." Demers v. Graham, 36 Mont. 402, 93 Pac. 268, 269, 14 L. R. A., N. S., 431, 122 Am. St. Rep. 384, quoting from Shoobert v. DeMotta, 112 Cal. 215, 44 Pac. 487, 53 Am. St. Rep. 207. See 10 Am. Jur., Chattel Mortgages, sec. 137, page 804.

Since McCahan was not a party to McNaught's mortgage on the National Bar, and since the Stockman's Bar was not purchased with any of Butts' money, the Stockman's Bar and fixtures could not be subjected to McNaught's mortgage.

Plaintiff's action lay against the Butts' estate and he realized that when he filed claim with its administrator, as shown by plaintiff's exhibit 10 for the $5,000 loaned Butts, with interest.

Under the evidence the motion for a non-suit made by defendant at the close of plaintiff's case should have been granted.

MR. CHIEF JUSTICE ADAIR:

I dissent.

Mr. JUSTICE BOTTOMLY: (dissenting).

This is an equitable action wherein the trial court found and concluded that: "At the time of the destruction by fire of the property owned by said co-partnership, as aforesaid, on said 5th day of August, 1948, said property was covered by fire insurance policies in which H. H. Selfridge, T. S. McCahan and F. H. Haddow, then administrator of the estate of Homer P. Butts, were named as insureds in the amount of $26,104.60, the premiums for which were charged to the partnership of McCahan and Butts and thereafter paid out of the assets of said partnership by said T. S. McCahan as surviving partner. Checks were issued covering such insurance totaling $26,104.60 payable to H. H. Selfridge, T. S. McCahan and F. H. Haddow as administrator of the estate

of Homer P. Butts, deceased, and during the month of November, 1948, and subsequent to November 1st, 1948, said checks were delivered to T. S. McCahan who procured the indorsements thereon of H. H. Selfridge and F. H. Haddow, administrator of the estate of Homer P. Butts, deceased. Thereupon, the said T. S. McCahan, as surviving partner of the firm of McCahan and Butts used the sum of $19,587.60 of the proceeds of said checks for the purpose of replacing the furniture, equipment, merchandise, stock in trade and other property of said co-partnership of McCahan and Butts, and thereupon carried on the tavern and saloon business theretofore conducted by said partnership. That said business was conducted by said T. S. McCahan at 123 Main Street, Kalispell, Montana, under the name of Stockman's Bar for his own sole use and benefit. That for the purpose of conducting and carrying on said business the said T. S. McCahan converted and made use of the beer and liquor licenses and renewals thereof issued to and owned by said partnership of McCahan and Butts, and covered by and described in plaintiff's chattel mortgage aforesaid. That the said T. S. McCahan carried on and conducted such tavern and saloon business for his sole use and benefit through the use of said licenses and renewals thereof, and with the furniture, fixtures, equipment, merchandise and other property purchased by him, as aforesaid, with moneys of the partnership, until on or about the 22nd day of May, 1950, upon which date the said T. S. McCahan, as surviving partner of McCahan and Butts, purported to sell said beer and liquor licenses owned by said partnership to Cora McCahan, his wife, subject, however, to the chattel mortgage owned and held by the plaintiff, as aforesaid. That at all times since said 20th day of May, 1950, the said T. S. McCahan and Cora McCahan have conducted and are now conducting a tavern and saloon business at the aforesaid location for their sole use and benefit. That neither said T. S. McCahan nor Cora McCahan has paid to plaintiff herein any part or portion of the principal or interest due upon said note or chattel mortgage.

"That the conditional sale contract note executed by T. S. Mc-

Cahan and Cora McCahan to H. H. Selfridge was fully paid and in all respects satisfied on the 1st day of November, 1948.

"That an undivided one-half interest in and to said beer and liquor licenses and renewals thereof now being used in conducting said tavern and saloon business at 123 Main Street, Kalispell, Montana, and an undivided one-half interest in the furniture, fixtures, and equipment in and upon said premises and used in conducting said business therein, to-wit:—Back bar, front bar, show cases, cash registers, safes, refrigerators, glass ware, furniture and fixtures, and all other equipment, is subject to and covered by the chattel mortgage owned and held by plaintiff, and said chattel mortgage is a valid first lien upon said undivided one-half interest in and to said beer and liquor licenses and said furniture, fixtures and equipment."

The court then ordered: "It is hereby ordered, adjudged and decreed that all and singular the mortgaged property in said amended complaint and herein described, or so much thereof, as may be necessary to raise the amount due plaintiff for principal, interest, attorney's fee, costs and disbursements herein, and costs and expenses of sale as hereinbefore set forth, be sold at public auction, by the sheriff of Flathead County, Montana, in the manner prescribed by law and the practice of this Court and that such sheriff issue proper documents of transfer to the purchaser of said mortgaged property on such sale and the plaintiff be permitted to become a purchaser at said sale.

"It is further ordered, adjudged and decreed that there is due, owing, payable and unpaid to the said plaintiff under the note and mortgage set forth in plaintiff's amended complaint and hereinabove described, the sum of $5,938.88 principal and interest; the further sum of $600.00, as and for a reasonable attorneys' fee; together with the further sum of $16.19, plaintiff's costs and disbursements herein allowed and taxes, together with interest upon all of said sums at the rate of 6% per annum from the date hereof until paid.

"It is further ordered, adjudged and decreed that the said sheriff, out of proceeds of such sale, retain his fees and disburse-

ments and pay to the plaintiff, or his attorney, the amount due as hereinabove set forth, together with interest at the rate of 6% per annum from the date of this decree, or so much thereof as the proceeds of said sale will pay of the same, and that if such sale shall render a surplus after the payment of the amount due under said mortgage with costs of suit and costs of sale, *said surplus shall be deposited in court until the further order thereof.* * * * [Emphasis supplied.]

"It is further ordered, adjudged and decreed that the property to be sold hereunder is more particularly described as follows:

"An undivided one-half interest in and to the beer and liquor licenses issued by the State Liquor Control Board of the State of Montana, and now in use in the conduct of the tavern and saloon business known as the Stockman's Bar at 123 Main Street, Kalispell, Montana, together with an undivided one-half interest in all furniture, fixtures and equipment therein situated, and described generally, but not exclusively, as the back bar, front bar, show cases, cash registers, safes, refrigerators, glassware, furniture, and fixtures, used in the conduct of said business and now located in and upon said premises."

In my opinion there is creditable testimony in the record to sustain the court's findings and judgment. I would affirm.

On Petition for Rehearing

Rehearing denied.

MR. CHIEF JUSTICE ADAIR and MR. JUSTICE BOTTOMLY:

In our opinion the petition for rehearing should be granted. We therefore dissent to the above order.