## VALE v. STUBBLEFIELD.

No. 2937. Opinion Filed October 14, 1913.

(135 Pac. 933.)

1. **CHATTEL MORTGAGES**—Junior Lien—Rights as Against Purchaser. "G.," as the owner of a large herd of cattle, executed a first mortgage to F. W. Co. and a second mortgage to plaintiff; both were recorded. On July 28, 1909, there was a balance of $3,750 due on the first mortgage. The power of sale contained in the mortgage permitted a private sale of the property upon default. On said date the mortgagee in the first mortgage directed G., the mortgagor, to sell all the cattle to the defendant and to apply the proceeds on the first mortgage indebtedness. The sale was so made without advertisement, or notice to the second mortgagee, or any kind of judicial proceedings. The defendant, notwithstanding the record notice of the second mortgage, bought the cattle from the mortgagor, at private sale, and paid him $6,412.50; said sum being $2,762.50 in excess of all claims under the first mortgage, and much more than sufficient to have paid off the second mortgage. The second mortgagee brought this suit against the purchaser to recover a portion of the cattle or their value. The facts stated above were set up in the answer as a defense. The court held, upon demurrer, that it was not a sufficient defense, and gave judgment in favor of the plaintiff. **Held**, the action of the court was not erroneous; when defendant bought the cattle from the mortgagor, with notice of both mortgages, at private sale and without notice to, or the consent of, the second mortgagee, he became a trustee, relative to the excess paid the mortgagor, over and above the amount due under the first mortgage, up to the extent of the lien of the second mortgage, and will be held bound to such junior lienholder to such extent for the property or its value.

2.    **SAME—Satisfaction by Sale—Possessory Rights.** When sufficient of the mortgaged chattels have been sold, by the holder of a first mortgage, to fully pay off all claims arising thereunder, the right of possession or of further sale, of any remaining mortgaged chattels, terminates, and the rights of such first mortgagee cease.

3.    **SAME—Sale of Property—Proceeds—Junior Mortgagee.** The junior mortgagee of the property is entitled, upon a sale of the mortgaged property, to any part of the proceeds remaining after satisfying prior incumbrances, to the extent of his lien debt.

(Syllabus by Brewer, C.)

*Error from District Court, Murray County;*
*R. McMillan, Judge.*

Action by R. W. Stubblefield against J. M. Vale. A demurrer to the answer was sustained, and defendant brings error. Affirmed.

*J. H. Casteel* and *Cruce, Cruce & Cruce,* for plaintiff in error.

*Fagan & Roberts,* for defendant in error.

Opinion by BREWER, C.   This is a suit in replevin for 75 steers. The court sustained a demurrer to the answer, and the correctness of this ruling is the only question before us.

A brief statement of the facts follows: Stubblefield, the defendant in error, brought the suit as plaintiff, against Vale, as defendant, in the court below; we will refer to them here as they appeared below. One Graham was the owner of a large herd of cattle on and prior to May 22, 1909, and gave a mortgage on that date to Park National Bank of Sulphur, Okla., for $1,000 on the cattle in controversy. This mortgage was assigned for value to the plaintiff, and this suit is based on the special ownership and interest with which plaintiff clothed himself by such purchase. This mortgage, however, was second and subject to a prior mortgage given by Graham to the Frank Witherspoon Commission Company, of Kansas City, Mo. The defendant Vale acquired the cattle in suit from Graham, the mortgagor, while both mortgages were recorded liens. The answer admits the execution of the note and mortgage declared

on by plaintiff and its assignment to him. The first clause of the answer, alleging an alteration in the date of the indorsement of the note transferring the title from the bank to plaintiff, is not argued here; counsel evidently, and properly, conceding that the admission in the amended answer of the execution and transfer of the note was an abandonment or waiver of any alteration as to the date of transfer on the back of the note, if in fact such alteration was material. The paragraph of the answer which it is contended stated a defense follows:

"(3) This defendant states that the mortgage described in plaintiff's complaint as having been executed by the said J. W. Graham to the said Park National Bank was made subject to a certain mortgage theretofore executed by the said Graham to Frank Witherspoon to secure a debt of $17,330, which was due on July 12, 1909. This defendant states that the said mortgage to the said Witherspoon Commission Company covered all of the cattle described in plaintiff's complaint and that the same was a lien prior and superior to any lien arising by virtue of the mortgage declared upon by the plaintiff herein. This defendant states that on, to wit, the 28th day of July, 1909, there was a balance due the said Frank Witherspoon of $3,750 of the indebtedness secured by said mortgage, and that said indebtedness was past due; that, under and by virtue of the terms of the mortgage to the said Witherspoon, the mortgagee therein had the right, upon default, to take possession of said property, and sell same at public or private sale, and apply the proceeds thereof to the payment of its said indebtedness; and that on said date the said mortgagee directed the said Graham, as its agent, to sell said cattle to this defendant, and apply the proceeds to the payment of said indebtedness; and that on said day, the said Graham, as agent of the said mortgagee, and with his permission, did sell said cattle to this defendant for the sum of $6,412.50, which amount of money this defendant did on said date pay to the said Graham.. This defendant states that by reason of said purchase he became the owner of said property free from any lien held by the plaintiff herein; that by reason of said purchase he became not only the owner of said property in his own rights, but he became subrogated to all the rights and interests of the said Frank Witherspoon in and to said property; and that ever since said date he had been entitled and is now entitled to the possession of said property. A

copy of the said mortgage to the said Witherspoon is filed as a part hereof and marked 'Exhibit A.' "

This answer discloses that on July 28, 1909, when there was only a balance of $3,750 owing on the first mortgage, the mortgagor in both mortgages, with the consent of the first mortgagee, sold at private sale the cattle covered by both mortgages to this defendant for $6,412.50, which sum of money was paid over to the mortgagor, in utter disregard of the rights of the second mortgagee. This sum was $2,762.50 in excess of the sum owing on the first mortgage. This was not a judicial sale; it was not even a sale with notice of any kind, so far as is shown. The defendant, with knowledge of the second lien, and of the amount due under the first, buys the mortgaged chattels, and pays into the hands of the mortgagor, money in excess of the first lien, in a sum nearly three times as large as would have been necessary to discharge the second mortgage. If this can be done, and the rights of a second mortgagee thus destroyed, it is apparent that such mortgages have no value, and are merely a delusion and a snare to entrap the unwary. Such is not the law.

Counsel for defendant, after summarizing the contents of the answer, say:

"The proceeds were applied in accordance with the terms of the (first) mortgage, and that Vale, the purchaser of said cattle, took good title to same free from the lien of the second mortgage," etc.

How could $6,412.50 be applied in accordance with the terms of a first mortgage, which it only required $3,750 to fully discharge and extinguish?

"It is a well-settled rule that a junior mortgagee of the property is entitled to any part of the proceeds remaining after satisfying prior incumbrances." (7 Cyc. 115, and authorities cited.)

When the mortgagee sells sufficient of the mortgaged chattels to pay the whole of the mortgage debt and the expenses of sale, his right of possession of any remaining mortgaged chattels terminates and his interest therein ceases. 7 Cyc. 113, and authorities.

When Mr. Vale bought the cattle, with notice of the junior mortgage, he became a trustee, relative to the excess over and above the amount due on the first mortgage, up to the extent of the lien of the junior mortgage, and will be bound to the junior lien creditor to such extent, for the property or its proceeds. *Butt v. Ellett,* 19 Wall. 544, 22 L. Ed. 183. The circumstances of this purchase render it a *mala fide* purchase, as to the second mortgagee. Story, Eq. Jur. (10th Ed.) secs. 395-397, *et seq.*

Counsel for plaintiff in error cites one case only to sustain his contention (*Madden v. Walker,* 7 Kan. App. 697, 51 Pac. 914), and we do not consider it in point. The other side cites no case, and we have not found a case standing on similar facts. But we have no doubt but the general principles stated above correctly dispose of this case. The answer did not state a defense.

In discussing this matter we have treated it as if a sale by a mortgagee at private sale without notice was valid under our statute; but this has been for convenience, the validity of such sale being in grave doubt.

The judgment should be affirmed.

By the Court: It is so ordered.