[Civil No. 1948. Filed April 5, 1922.]

[205 Pac. 810.]

## CENTRAL FINANCE CORPORATION, a Corporation, Appellant, v. NORTON–MORGAN COMMERCIAL COMPANY, a Corporation, Appellee.

1. CHATTEL MORTGAGES — POWER OF MORTGAGEE TO SELECT OTHER PROPERTY THAN THAT DESCRIBED HELD LOST BY FAILURE TO EXERCISE IT, AND DOES NOT APPLY TO SURPLUS ON FORECLOSURE. Even if a chattel mortgagee had the right under the provisions of his mortgage to select in lieu of cattle described in the mortgage other cattle owned by the mortgagor on which he also had a chattel mortgage and on which there was a second mortgage in favor of another, without showing that there were no unmortgaged cattle which might be selected, the first mortgagee lost his right of selection by failing to exercise it before selling the cattle covered by his two mortgages under the mortgage describing them respectively, and he cannot exercise it by transferring the excess received in one sale to make up the deficiency in the other sale.

---

1. Rights of junior chattel mortgagee with respect to mortgaged property, note, **Ann. Cas.** 1916A, 864.

2. Chattel Mortgages—Are Security Only Until Foreclosure.—Under Civil Code of 1913, title 35, chapter 4, a chattel mortgage is security merely, and the title to the property remains in the mortgagor until· foreclosure or some act tantamount thereto, and that statute, particularly paragraphs 4126, 4136, contemplates the creation of secondary liens by subsequent mortgages.

3. Chattel Mortgages—Sale is Absolute in Absence of Fraud or Irregularity.—In view of Civil Code of 1913, paragraphs 4134, 4137, 4139, authorizing sale of mortgaged chattels and providing for no equity of redemption, the sale of such chattels is absolute, in the absence of fraud or some irregularity vitiating it.

4. Chattel Mortgages — Default Without Foreclosure Gives Mortgagee No Right of Possession.—Since a chattel mortgage is in no sense a sale upon condition, the default of the mortgagor gives the mortgagee no right to keep, treat, or dispose of the property as his own.

5. Chattel Mortgages — Defaulting Owner's Interest Before Foreclosure Can be Mortgaged.—After a mortgagor has defaulted in payment of the notes secured by chattel mortgages, and the mortgagee has taken possession of property for the purpose of sale, the mortgagee's interest in the property, even if only an equitable right to an accounting, is one which it could assign or convey, and therefore could mortgage by a second chattel mortgage.

6. Chattel Mortgages—Any Personal Property Capable of Sale May be Mortgaged.—As a general rule, in the absence of statutory provision to the contrary, any personal property which is capable of being sold may be the subject of a mortgage.

7. Chattel Mortgages—Suit by Second Mortgagee for Accounting by First Mortgagee Ratifies Irregular Sale.—Where the second mortgagee of chattels brought suit against the first mortgagee for an accounting of the excess received at the sale of the chattels, it ratified the sale, so that any questions as to validity thereof become immaterial.

8. Chattel Mortgages—Mortgagee Holds Excess Realized by Sale in Trust.—A chattel mortgagee holds the proceeds of sale in excess of the amount to satisfy his claim in trust, and is bound to account for such moneys in an equitable action for accounting, or they may be recovered in an action in trover and *assumpsit* or other form of action.

9. Chattel Mortgages—First Mortgagee has No Equity in Excess from Sale to ·Pay Debt Secured by Another Mortgage Enforceable Against Second Mortgagve.—A mortgagee who held two separate mortgages, each covering a different herd of cattle, and who sold both herds under the mortgages, and realized an excess over debts secured by one mortgage, but not enough to

pay the debt secured by the other mortgage, has no equitable right to apply the excess from the first sale to the deficiency of the second, which he can enforce against a second mortgagee of the property covered by the first mortgage, even though he would have such equity against the common owner of the property.

10. CHATTEL MORTGAGES—EQUITIES HELD EQUAL SO THAT LEGAL TITLE PREVAILS.—The equities of first mortgagee, who applies the excess from the sale of the chattels to another debt, and of a second mortgagee, are equal, both being founded on valuable consideration, so that the legal right of the second mortgagee will prevail.

APPEAL from a judgment of the Superior Court of the County of Cochise. Alfred C. Lockwood, Judge. Affirmed.

### STATEMENT OF FACTS.

This is an action by the second mortgagee of certain chattels for an accounting by the first mortgagee of the moneys received by the latter in excess of its debt, upon sale of the property under foreclosure. The mortgagor is the Circle A Cattle Company, hereinafter referred to as the cattle company; the first mortgagee is the Central Finance Corporation, hereinafter referred to as the finance corporation, or appellant; and the second mortgagee is the Norton-Morgan Commercial Company, hereinafter referred to as the commercial company, or appellee.

The complaint of the commercial company alleges that the mortgage to it was executed by the cattle company on June 29, 1920, to secure the sum of $4,829.77 and interest, evidenced by a note due six months thereafter. The security described in the mortgage was the same property theretofore mortgaged by the cattle company to the Texas Bank & Trust Company to secure payment of a note for $16,000 and interest, dated October 30, 1919, and due June 15, 1920. This property consisted of 1,025 head of Hereford cattle, branded Y-Cross. (For conve-

nience, we shall refer to these mortgages as the Y-Cross mortgages.) On June 17, 1920, the bank assigned this note and mortgage to the finance corporation. The complaint further alleges that this property was sold under said mortgage on July 10, 1920, by the finance corporation and that after applying the sale money and certain other credits a sum in excess of the mortgage debt due the finance corporation came into his hands. To this fund the commercial company made claim, praying for an accounting as to such surplus and for judgment against the finance corporation accordingly. The cattle company and certain purchasers of the cattle at the foreclosure sale were made parties defendant to the suit, but no question arises concerning their rights.

The amended answer of the finance corporation sets forth, amongst other matters, the following: On January 22, 1920, the cattle company mortgaged directly to the finance corporation 1,163 head of cattle in various brands, being stock not included in the Y-Cross mortgage, to secure payment of the sum of $13,610, payable June 15, 1920, with interest. (This mortgage, which included stock branded Circle A, for purpose of convenience may be referred to as the Circle A mortgage.)

The answer further alleges that the cattle company defaulted in the payment of both said mortgages on the due date, to wit, June 15, 1920, and after demand for the cattle covered by the mortgages, and failure by the cattle company to deliver the same, the finance corporation, on the twenty-second day of June, 1920, brought actions to replevy the property, and the sheriff, under such writs, did on June 30, 1920, deliver all such cattle he could find to the finance corporation. Thereafter, and on the tenth day of July, pursuant to notices of sale duly given, the properties were sold under said mortgages as follows: The prop-

erty under the Circle A mortgage was sold to various purchasers for the sum of $6,372, and the property under the Y-Cross mortgage was sold to various purchasers for the sum of $15,153. The total amount realized upon the Circle A stock by such sale, with a credit derived from the sale of certain of the property before that time, amounted to the sum of $7,789.28, leaving a deficiency due the finance corporation under the Circle A mortgage of about $6,500. Upon the Y-Cross mortgage, however, the sale price on foreclosure, together with a payment theretofore made on the note and the cash derived from another sale of the property under the mortgage by an intermediate agreement, amounted to the total sum of $23,666.22, a sum much in excess of the amount due on the Y-Cross mortgage to the finance corporation.

Both the Circle A and the Y-Cross mortgages, held by the finance corporation, contained the following clause:

"It is expressly agreed that if mortgagor shall own more cattle, horses, or other property of like kind with those mentioned in this mortgage, then the mortgagee, in case of default, shall have the right to pick from the whole number so owned by mortgagor the number equal to that specified in this mortgage, and to hold, sell and dispose of the same as though the same was specifically included herein."

Paragraph 8 of such answer reads as follows:

"That the total amount received by this defendant from the sale of the cattle delivered to this defendant by the said sheriff as aforesaid under the said 'Circle A' mortgage was the sum of $7,789.28; that there remained a deficiency under said mortgage after the sale of said cattle, a sum in excess of $6,500; that under the provisions of the said last-mentioned mortgage it was expressly provided that if the mortgagor should own more cattle, horses, or other property of like kind to those mentioned in said mortgage, then the mortgagee in case of default should have the right

to pick from the whole number so owned by mortgagor the number equal to that specified in said mortgage, and to hold, sell, and dispose of the same as though the same were specifically included therein; that under the provisions of said clause in said mortgage this defendant did, immediately upon the default of the said 'Circle A' mortgage, pick from the cattle of like kind to those covered by said 'Circle A' mortgage owned by the said 'Circle A' Cattle Company a number less than that specified in said mortgage, which cattle so picked by this defendant were covered by the said 'Y-cross' mortgage, and were a part of the cattle gathered by said sheriff and sold as above alleged, and did sell and dispose of the same under said clause in the manner and at the time above set forth, and did apply the proceeds of the sale thereof to the satisfaction of said 'Circle A' mortgage; that there still remains a deficiency on the said 'Circle A' mortgage of an amount in excess of $3,500 after applying the proceeds of the sale of the cattle described in said 'Circle A' mortgage and the cattle picked from other stock of like kind, as aforesaid.''

The answer does not deny that the note and mortgage to the commercial company were based upon the consideration recited in the note. It is likewise unquestioned that the mortgage to the commercial company was made prior to the sale had on July 10, 1920.

The court sustained a demurrer to this answer, and, upon the refusal of the finance corporation to amend, entered judgment on the pleadings that the finance corporation account to the plaintiff commercial company for the proceeds of the sale under the Y-Cross mortgage, and that the commercial company have judgment against the finance corporation for the amount due under its note and mortgage. From this judgment the finance corporation has appealed.

Mr. Richard E. Sloan, Mr. C. R. Holton and Mr. E. G. Scott, for Appellant.

Mr. Francis M. Hartman and Mr. John C. Gung'l, for Appellee.

FLANIGAN, J. (After Stating the Facts as Above.) Notwithstanding that the answer of the appellant specifically alleges that the Circle A cattle were sold under the Circle A mortgage, and the Y-Cross cattle were sold under the Y-Cross mortgage, the suggestion is made that the allegations in paragraph 8 of the answer, which we have quoted, are sufficient upon which to predicate some legal or equitable right in the appellant to apply the surplus proceeds in its hands, derived from the sale of the cattle under the Y-Cross mortgage, to the deficiency due under the Circle A mortgage. For the purpose of this discussion we may assume that by virtue of the selection clause of the Circle A mortgage, the appellant was empowered to pick from the cattle under the Y-cross mortgage a number of like kind to that specified in the Circle A mortgage, to eke out its security, even without an allegation that there were no unmortgaged cattle of the cattle company from which such selection could be made, and even though the descriptions were not in serious question for uncertainty.

It is apparent that what appellant now seeks to do is to transfer its right of selection from the cattle under the Y-Cross mortgage to the surplus fund derived from the sale of such cattle. It is plain that if the power was in fact exercised as alleged in paragraph 8, appellant had taken its legal rights in full measure and has no ground for complaint; if, on the other hand—which we take to be the fact—no attempt was made to exercise the power therein conferred by selection and sale, the power conferred must be regarded as unexercised. Appellant's failure to avail itself of such right was a voluntary relinquishment and waiver thereof. It is not alleged that the

appellee in any way induced the appellant to forego the benefits to be obtained by the exercise of this power. On the contrary, it is evident that the appellee could not have interfered as it had no control over the subject matter. The property has been sold under the Y-Cross mortgage, and the conditions upon which the power might have been made beneficially effective to appellant no longer exist. Whether the power was exercised or not, it is clear that the effect of the transaction is precisely the same as if the Circle A mortgage had contained no such clause, and that the rights of the parties are to be determined without reference to this provision. Our inquiry must therefore be addressed to a determination of the validity of the commercial company's claim to such surplus fund under its second mortgage on the Y-Cross cattle, free of any lien-secured claim in favor of appellant.

In *Mooney* v. *Broadway*, 2 Ariz. 107, 11 Pac. 114, it is held that a chattel mortgage is a security merely, and until foreclosure or some act tantamount thereto, the title of the property mortgaged remains in the mortgagor. See chapter 4, title 35, Rev. Stats. 1913. That the statute just cited contemplates the creation of secondary liens by subsequent mortgages is plainly shown by several of the paragraphs of that chapter. See, in particular, paragraphs 4126, 4136.

Paragraph 4134 provides that—

"A mortgage of personal property, where the time of payment is therein fixed, may be foreclosed by notice and sale. . . . "

Paragraph 4137:

" . . . The purchaser shall take all the title and interest on which the mortgage operated."

And paragraph 4139 reads:

"The officer or person conducting the sale shall execute to the purchaser a bill of sale of the property,

which shall be effectual to carry the whole title and interest purchased.''

As no equity of redemption is provided for in the statute, the sale is absolute, in the absence of fraud or some irregularity vitiating such sale.

In the case of *Backhaus* v. *Buells*, 43 Or. 558, 73 Pac. 342, the court, speaking of the relative rights of mortgagor and mortgagee in the mortgaged property after default, uses language descriptive of these rights which correctly sets forth the law to be deduced from our statutory provisions. It is there stated that a chattel mortgage is in no sense a sale upon condition; that upon default the mortgagee has no right to keep, treat, or dispose of the property as his own, and, further, that—

''The legal claim which he [the mortgagee] asserts upon the mortgagor's default is the lien, coupled with a right to the immediate possession of the property; but, the mortgagee being a trustee of the mortgagor, the union of such lien and right can never ripen into a title until the lien has been foreclosed in the manner prescribed by law.''

And, ''when the mortgagee secures possession of mortgaged chattels, it is for the purpose of satisfying his debt, upon the discharge of which his right to the property ceases''—citing *Freeman* v. *Freeman*, 17 N. J. Eq. 44.

It is the contention of the appellant that upon default in the payment of the note secured by the first mortgage and possession taken of the property for the purpose of sale, the cattle company had no mortgageable interest in the property; that it had only a chose in action, viz., an equitable right to an accounting. Even if we should grant that the only right of the mortgagor was an equitable right to an accounting, it would not follow that such right to property does not constitute an interest which the mortgagor could not assign or convey.

The general rule is, we think, correctly stated in 11 C. J., at page 427, that, in the absence of statutory provision to the contrary, any personal property which is capable of being sold may be the subject of a mortgage. And in jurisdictions where, after condition broken and possession taken of the property by the mortgagee, the rule prevails that the mortgagor's interest is a mere equity of redemption, it has' been held that this equity of redemption may be mortgaged or sold. *J. I. Case Threshing Machine Co.* v. *Rice,* 152 Wis. 8, 139 N. W. 445; *Smith* v. *Coolbaugh,* 21 Wis. 427; *White* v. *Quinlan,* 30 Mo. App. 54. In the case last cited, which is very similar in facts to the case at bar, it is held that a second mortgage of the property by description, as such, is valid as an encumbrance of the equity of redemption.

It cannot be doubted, therefore, that the' legal ownership and property right vested in the mortgagor before foreclosure may be sold. As was said in the case of *Appleton* v. *Bancroft,* 10 Metc. (Mass.) 231:

This right "is founded on the great principle, lying at the foundation of the right of property, that general ownership carries with it a full power of disposition; and when such ownership is not taken away, but only limited, as in case of a lien, the power of disposing still remains, subject only to the lien."

It is not necessary to inquire into the validity of the sale of the Y-Cross cattle, so far as such sale went beyond the necessity of satisfying the debt due on the first mortgage. If such sale constituted a conversion, that question is not before us, for the sale was ratified by the appellee. Under the authorities, the appellant simply holds the excess moneys in trust for the mortgagee, and is bound to account for such moneys in an equitable action for an accounting. *Navajo-Apache Bank & Trust Co.* v. *Desmont,* 19 Ariz. 335, 170 Pac. 798. See, also, the following: *Vale* v. *Stubblefield,* 39

Okl. 462, 135 Pac. 933; *Smith* v. *Donahoe*, 13 S. D. 334, 83 N. W. 264; *Howard* v. *Gemming*, 10 Wash. 1, 38 Pac. 748; *Parker* v. *Panhandle Nat. Bank*, 11 Tex. Civ. App. 702, 34 S. W. 196; *Tiedt* v. *Boyce*, 122 Minn. 283, 142 N. W. 195; *White* v. *Quinlan, supra; Charter* v. *Stevens,* 3 Denio (N. Y.), 33, 45 Am. Dec. 444—in which cases the right to the surplus, whether asserted in an action in trover, in *assumpsit* for money had and received, or other form of action, is recognized. That the right exists is clear, under the facts shown by the pleadings here.

Had the second mortgage never been made, an equitable right of setoff might have been asserted by the appellant to retain and apply the money in its hands as against the Circle A cattle company's demand. This feature of the case has been pressed upon us for consideration in one form or another as the basis of some supposed legal or equitable claim of appellant superior to the claim of appellee. No authorities have been cited, however, to sustain the right of the appellant to retain such moneys as against the appellee. In the case of *White* v. *Quinlan, supra,* the first mortgagee was asserting a precisely similar claim as against the second mortgagee, and the decision of the court impliedly held it to be without merit.

It is insisted that the appellant's claim must be considered from an equitable standpoint. We do not think the case calls for a resort to equitable maxims or principles as distinguished from the rules of law plainly governing the case. But, if we should regard the conflicting claims to the fund from the equitable standpoint alone, as we are asked to do, the equities of the parties are equal, in that both claims are based upon valuable consideration. In addition to the equity of the appellee, however, it is possessed of the legal title to the fund and where the equities are equal the legal title prevails. Appellant's claim

by reason of its accidental control and possession of the fund is no stronger than would be the claim of any other general and unsecured creditor asserting a claim against the fund already impressed with appellee's lien.

As it is not questioned that the judgment of the lower court was for the sum actually due upon the note and mortgage, or that such sum is less than the surplus in appellant's hands, the judgment, for the reasons we have stated, must be affirmed.

ROSS, C. J., and McALISTER, J., concur.