### BOOTH v. FIRST STATE BANK OF MARAMEC.

No. 14805—Opinion Filed Sept. 30, 1924.

**Chattel Mortgages—Payment of First Mortgage by Purchaser of Property—Effect as Making Second Mortgage First Lien.**

Where personal property is covered by a first and second mortgage and the purchaser of the property pays off, or causes to be paid, the first mortgage, which is thereupon released and withdrawn from the records of the county clerk's office, the second mortgage ipso facto becomes a first lien on the property and the purchaser cannot defeat the lien of the second mortgage under the claim that he is an equitable assignee of the first mortgage.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Payne County; Charles C. Smith, Judge.

Action by the First State Bank of Maramec, Okla., against C. W. Boyd, C. P. Booth intervened. From judgment in favor of the plaintiff, C. P. Booth, intervener, appeals. Affirmed.

Wilcox & Swank, for plaintiff in error.

L. G. Lewis, for defendant in error.

Opinion by PINKHAM, C. This is an action in replevin originally filed in the justice of the peace court by the First State Bank of Maramec, as plaintiff, against Clarence W. Boyd, as defendant. The property in controversy consisted of a team of mules. The plaintiff in error, C. P. Booth, intervened in

the cause, which was tried in the justice of the peace court, and judgment rendered therein in favor of the plaintiff bank, whereupon the case was appealed to the district court where the cause was tried to the court without the intervention of a jury.

At the conclusion of the trial in the district court judgment was rendered in favor of the plaintiff bank.

The intervener, Booth, filed his motion for a new trial, which was overruled, and the cause comes regularly on appeal to this court by the intervener, plaintiff in error herein.

The following are the facts, briefly stated:

One W. S. Wade was the owner of the team of mules in controversy, and on the 1st day of March, 1921, executed a note to one John C. Culver, for the sum of $190, secured by a mortgage on the team of mules in question.

Thereafter, on the 5th day of May, 1921, the said W. S. Wade executed a second note and mortgage to the plaintiff bank in the amount of $550 on the identical team of mules, together with other property. On the 6th day of June, 1921, the said Wade sold the mules in controversy to the plaintiff in error. Upon the sale of said mules W. S. Wade satisfied the first mortgage held by Culver. It appears that upon the discovery of the location of the mules in question this action was commenced by the defendant in error under its mortgage.

It appears that at the time the plaintiff in error purchased the team of mules from the mortgagor, W. S. Wade, Wade paid off his mortgage to Culver, the first mortgagee, with the funds paid him by the plaintiff in error, and that Culver then requested an officer of the bank, where he did business, to see that his mortgage, having been paid, was released of record, which was afterward done.

It further appears that the plaintiff in error, shortly after this transaction, sold the mules to Boyd, and after the institution of this action canceled Boyd's indebtedness and took back the property.

It is contended that under this state of facts the plaintiff in error having paid Culver, the first mortgagee, the amount of his mortgage, he became thereby subrogated to all the rights that Culver, the first mortgagee, had under his mortgage, and that, in effect, there was a legal assignment of the Culver note and mortgage to the plaintiff in error.

This contention cannot be sustained. It is conceded that at the time the plaintiff in error bought the property in question the bank's mortgage was of record, and that the plaintiff in error, therefore, had constructive notice of that fact, and it is not contended that Culver, the first mortgagee, surrendered his note or mortgage to the plaintiff in error. The positive testimony of Mr. Culver, the senior mortgagee, was that the note and mortgage were at no time delivered or assigned to the plaintiff in error, and that at the time Wade, the mortgagor, paid off his mortgage, he directed the banker at whose place of business the transaction was carried out, to cause his mortgage to be released of record, and that he paid no further attention to the note and mortgage, which it appears he considered of no further value.

In 5 C. J. 901, sec. 65, it is said:

"To constitute a valid oral assignment, however, it must be shown that the owner surrendered all control of the chose and made an absolute appropriation of it to the use of the assignee."

In 2 Am. & Eng. Enc.Law, 1057, it is said:

"In accordance with the principles above laid down the mere delivery of a note or bond or other written obligation or evidence of debt with the intent to assign will of itself constitute a valid and sufficient assignment."

It is said by Redfield, J., in Whittle v. Skinner, 23 Vt. 531:

"We know of no case where a mere agreement to assign a chose in action without even a symbolical delivery has been held valid between the parties even. In the case of a note or bond the delivery of the contract is sufficient. So, too, when the assignment of an account is made it has been held sufficient to deliver the bill. And when the assignment is in writing the delivery of the writing would likely be sufficient. But we recollect no case where the mere agreement to assign has been held an assignment in the present tense."

We are unable to discover from the record any evidence that shows or tends to show an assignment of, or even an oral agreement to assign, the Culver mortgage, or that the plaintiff in error was subrogated legally or otherwise to the rights of the first mortgagee. The very fact that the plaintiff in error sold the property to Boyd without taking any step to foreclose the Culver mortgage disproves the fact that he was claiming as an assignee thereof.

Where personal property is covered by a first and second mortgage and the purchaser of the property pays off, or causes to be paid, the first mortgage, which is thereupon

released and withdrawn from the records of the county clerk's office, the second mortgage ipso facto becomes a first lien on the property, and the purchaser cannot defeat the lien of the second mortgage under the claim that he is an equitable assignee of the first mortgage.

The case of Vale v. Stubblefield, 39 Okla. 462, 135 Pac. 933, is cited and stated by counsel for plaintiff in error to be controlling in the instant case.

The facts in the two cases are, we think, widely variant.

In the case cited the first mortgagee directed the mortgagor as his agent to sell the chattels there involved at private sale, which the mortgagor did, receiving sufficient money to discharge both mortgages, but after paying the first mortgage failed to pay over the balance or enough of the same to satisfy the junior mortgage.

In this whole transaction we are unable to · discover from the record any evidence. of any intention on the part of any of the parties to consider the transaction an assignment of the first mortgagee's mortgage to the plaintiff in error.

Plaintiff in error's position is simply that of a purchaser of mortgaged property subject to all prior existing mortgages.

We conclude that the findings of the trial court are correct and that the judgment should be affirmed.

By the Court: It is so ordered.