[Civil No. 2228.   Filed March 4, 1925.]

[233 Pac. 593.]

J. O. BROWN, J. O. BROWN, Administrator of the Estate of MYRTLE BROWN, Deceased, THE ARIZONA COPPER COMPANY, a Corporation, PHELPS-DODGE MERCANTILE COMPANY, a Corporation, and H. K. GATLIN, Appellants, v. EUGENE SCHWAB, Appellee.

1. CHATTEL MORTGAGES—CHATTEL MORTGAGE DOES NOT PASS TITLE, BUT IS MERE LIEN.—Chattel mortgage does not pass title, but is mere lien.

2. CHATTEL MORTGAGES—CHATTEL MORTGAGE ON CATTLE DOES NOT INCLUDE INCREASE, IN ABSENCE OF SPECIFIC PROVISION.—Chattel mortgage on cattle does not include increase, in absence of specific provision.

3. CHATTEL MORTGAGES—NO PARTICULAR FORM NECESSARY TO MAKE MORTGAGE OF CATTLE COVER INCREASE.—No particular form of language is necessary to make chattel mortgage of cattle cover increase also.

4. CHATTEL MORTGAGES—CHATTEL MORTGAGE OF RANCH CATTLE HELD TO INCLUDE INCREASE.—Chattel mortgage of "all cattle and horses branded O X O, \o," running on particular range, which was followed by statement, "The mortgagor agrees not to sell any more cattle than the amount of increase each year," held to cover increase of such cattle, and to contemplate that such increase would be branded in like manner.

See (1) 11 C. J., pp. 399, 401.   (2) 11 C. J., p. 503.   (3) 11 C. J., p. 502.   (4) 11 C. J., p. 502.

APPEAL from a judgment of the Superior Court of the County of Greenlee.   W. R. Chambers, Judge. Affirmed.

2. Whether chattel mortgage on domestic animals covers their increase when not mentioned therein, see notes in 13 Ann. Cas. 100; Ann. Cas. 1917C, 1173; 17 L. R. A. 82; 14 L. R. A. (N. S.) 431.

Meaning of term "increase" in description in chattel mortgage on animals, as including increase other than by generation, see note in 1 A. L. R. 554. See, also, 5 R. C. L. 408. 3. See 5 R. C. L. 384.

Mr. H. A. Elliott and Mr. B. B. Shimmel, for Appellants.

Mr. L. Kearney, for Appellee.

McALISTER, C. J.—On April 1, 1918, defendant, J. O. Brown, purchased from Harland Walker a ranch situated in Greenlee county, Arizona, and some cattle and horses ranging thereon branded "O X O" and " \°," and on the same day executed and delivered to Walker three promissory notes aggregating $6,000, and a chattel mortgage to secure them, on the following described property:

"All cattle and horses branded as follows: O X O, \°, said cattle and horses ranging on their accustomed range about 15 miles north of Clifton on what is known as Sardine creek in Greenlee county, Arizona."

Following this description is this sentence:

"The mortgagor agrees not to sell any more cattle than the amount of increase each year."

In February, 1919, Walker assigned the notes and mortgage for a consideration of $6,240 to Eugene Schwab, who, in September, 1922, began suit to foreclose his mortgage, Brown having defaulted in his payments. The Arizona Copper Company was made a defendant, because, on February 26, 1921, it had taken from Brown his promissory note for $550 and to secure it a chattel mortgage on "300 head of range cattle branded O X O on left side." This was a second mortgage. On October 26, 1922, the defendant, Phelps-Dodge Mercantile Company (successor to the Arizona Copper Company), took from Brown a note for $641.67, the amount of the note to the Arizona Copper Company, together with interest thereon, and a new chattel mortgage on the following property, to wit:

"All one, two, three and four year old cattle and horses branded with the brand O X O on the left side . . . and all such cattle and horses so branded during the year 1922 and subsequent thereto."

On the same date Brown executed and delivered to H. K. Gatlin, a bill of sale to the foregoing cattle, and, on November 13th, thereafter plaintiff, Schwab, filed a second amended complaint in which he made Gatlin and the Phelps-Dodge Mercantile Company parties defendant, and alleged that his mortgage covered the increase of the old O X O cattle.

Plaintiff contended, and the trial court held, that his mortgage covered the increase of cattle branded O X O, and a decree foreclosing his lien and ordering the sale of all cattle so branded was entered. The defendants appeal from this order, their contention being that plaintiff's mortgage did not cover the increase, and that the decree of foreclosure should not have done so. The several assignments are directed to this one question—whether a chattel mortgage covers the increase of the cattle described therein when there is no provision specifically including them.

Under the common law the mortgagee is vested with a defeasible title to the mortgaged property, and in those jurisdictions in which this rule obtains the courts have generally held that a chattel mortgage lien on domestic animals extends to their increase. 11 C. J. 503. But in practically all those jurisdictions which treat a mortgage as a lien only the holding is to the contrary. *Ayre* v. *Hixson et al.,* 53 Or. 19, 133 Am. St. Rep. 819, Ann. Cas. 1913E, 659, 98 Pac. 515. In this state a chattel mortgage does not pass title, but is merely a lien (*Central Finance Corp.* v. *Norton-Morgan Com. Co.,* 23 Ariz. 517, 205 Pac. 810), and we are therefore of the opinion that the contention of appellant is correct. The general rule

is that the owner of the mother is the owner of her offspring, and from this it follows logically that where title to the mother passes to the mortgagee the ownership of the increase passes with it, but where it remains in the mortgagor the ownership of the increase also remains. This being true a lien on animals in a jurisdiction in which the latter rule prevails does not extend to the increase, unless it can be gained from the terms of the mortgage itself that such was the intention of the parties. *Dixon* v. *Pierce,* 22 Ga. App. 291, 95 S. E. 995; *Demers* v. *Graham,* 36 Mont. 402, 122 Am. St. Rep. 384, 13 Ann. Cas. 97, 14 L. R. A. (N. S.) 431, 93 Pac. 268; *Ayre* v. *Hixson et al., supra.* The exact question has never been before this court, though, in disposing of an appeal from the Supreme Court of the Territory of Arizona in 1898, the Supreme Court of the United States, speaking through Mr. Justice McKENNA, used this language:

"Under the rule that the incident follows the principal, a mortgage of domestic animals covers the increase of such animals, though it is silent as to such increase. This court said in *Cattle Co.* v. *Mann,* 130 U. S. 69 (32 L. Ed. 854, 9 Sup. Ct. 458), by Mr. Justice HARLAN: ' . . . According to the maxim, "*Partus sequitur ventrem,*" the brood of all tame and domestic animals belong to the owner of the dam or mother.' 2 Bl. Comm. 390. See, also, *Pyeatt* v. *Powell* (decided by the Circuit Court of Appeals for the Eighth Circuit), 10 U. S. 200, 2 C. C. A. 367, and 51 Fed. 551, and cases cited." *Northwestern National Bank* v. *Freeman,* 171 U. S. 620, 43 L. Ed. 307, 19 Sup. Ct. 36 (see, also, Rose's U. S. Notes).

An examination of the cases cited by the court, as authority for its holding, discloses that they were in jurisdictions in which the common-law principle that chattel mortgages pass title prevails; and it is evident that the fact that they are treated as mere liens in Arizona was not called to the attention of the

court. If it had been, the ruling would doubtless have been in line with those in jurisdictions in which the rule followed in Arizona is in force, for, as just stated, it is only by giving a mortgage its common-law meaning that a court may logically say that a lien on the mother is a lien on her young. The impression that the common-law rule prevails in Arizona has been gained by some of the courts from this decision, for it is cited in *Ayre* v. *Hixson, supra,* as authority for the proposition that a mortgage covers the increase in most states where the mortgage transfers title.

When that case was decided the United States Supreme Court was the court of last resort for Arizona, and appellee urges that while it may not be binding on the state as it was on the territorial Supreme Court, yet property rights have grown up under the rule announced, and for this reason the principle of *stare decisis* should govern and the decision adhered to as the law of the state as it was of the territory. Under this rule decisions thought to be wrong in principle are frequently followed, in order that an injustice may not be done those who have acquired property rights in reliance upon them, but we feel that no such condition exists, so far as the holding in the Freeman case is concerned. Chattel mortgages in this state rarely, if ever, omit the word "increase," or some other appropriate term, if the parties intend that the increase should be included.

This necessitates an examination of the terms of the mortgage held by appellee. It is, of course, not necessary that any particular wording be used in order that the increase may be included in its terms. If the language employed fairly imports such an intention it is sufficient. The property conveyed is described as "all cattle and horses branded O X O,

\°,'' and running on the particular range mentioned.
It is appellant's contention that the term ''branded''
refers to the cattle bearing this brand at the time the
mortgage was executed and none other, but a con-
sideration of the entire instrument, we think, leads
to the conclusion that it refers not merely to these,
but as well to their increase which it was clearly
intended should thereafter bear the same brand. The
sentence, immediately following the description, ''the
mortgagor agrees not to sell any more cattle than the
amount of increase each year,'' considered in connec-
tion with the fact that the notes secured were for
one, two and three thousand dollars respectively, and
matured one, two and three years after date, in our
view, discloses this. The mortgagor was allowed to
sell cattle each year, but no more than the increase,
which shows that the parties intended that the number
of the O X O cattle should remain at least the same
as when the mortgage was given, and the only way
it could have been contemplated that this should be
done was by branding the increase of this cattle in
that brand. Hence, permitting the sale each year
of no more than the amount of the increase was
simply another way of providing that the security
for the notes should be kept intact until they were
paid. It clearly was not intended that the mortgagor
might sell each year as many cattle as the increase
amounted to for that period, without replacing them
by the calves, for this would have resulted in a dis-
posal of the security, or at least a large part of it,
before the debt it was guaranteeing was paid. Re-
quiring that the number of the O X O cattle should
remain the same during the life of the mortgage
could have had no purpose other than to provide
that the security for the notes should not be reduced
before they were discharged. This we think dis-

closes that the increase of the O X O cattle were to become each year a part of the herd bearing that brand, and that they were to be included in the mortgage.

The judgment is affirmed.

ROSS and LOCKWOOD, JJ., concur.