[Civil No. 2791. Filed June 3, 1929.]

[278 Pac. 68.]

J. A. HAGAN, Appellant, v. WILLIAM COWAN, Appellee.

See Actions, 1 C. J., sec. 276, p. 1106, n. 48.
Appeal and Error, 4 C. J., sec. 2878, p. 908, n. 64, p. 909, n. 68.
Chattel Mortgages, 11 C. J., sec. 52, p. 444, n. 76; sec. 171, p. 502, n. 45.
Evidence, 23 C. J., sec. 1810, p. 59, n. 22.

Mr. T. E. Allyn, for Appellant.

Mr. J. T. Kingsbury, for Appellee.

LOCKWOOD, C. J.—William Cowan, hereinafter called plaintiff, brought this suit against H. A. Gatlin, W. R. Stevenson, A. G. Stevenson, J. A. Hagan, W. F. Hagan and Everett Hagan. The complaint, omitting the formal matters, set up the following facts:

In June, 1920, Gatlin and the Stevensons executed a chattel mortgage in favor of plaintiff on certain cattle described as follows:

"All Horses branded thus: L U E and all cattle branded as follows with the following brands: ZZZ, H H, MIN, ET, WJ, EC, 999, BO, K, LB, and all increase is to be kept up and branded as follows: L U E, all of the above stock is now in Greenlee County, State of Arizona, and being Blue River district," to secure an indebtedness of some $44,000. In June, 1926, plaintiff brought suit against Gatlin and the Stevensons to foreclose the mortgage, and judgment was rendered in favor of plaintiff and against the defendants therein for the sum of $72,331.75, and for a foreclosure of the mortgage. The property was sold to plaintiff at sheriff's sale under such foreclosure for the sum of $10,000, and a deficiency judgment was docketed against defendants in the sum of $62,331.75. The complaint then alleged that J. A. Hagan, W. F. Hagan and Everett Hagan claimed some right, title or interest to the cattle described in the mortgage aforesaid, which claims were subordinate to plaintiff's lien under the mortgage, but that through error and mistake of fact the Hagans had not been made parties to the suit commenced in June, 1926, and carried to judgment as aforesaid, and that the present action was brought for the purpose of foreclosing any interest which they might have in the property covered by the mortgage. There followed a prayer for judgment as in the former suit for the deficiency still outstanding, and that the Hagans be foreclosed and barred of all interest in the mortgaged property, and for an execution commanding a sale of the mortgaged property in satisfaction of the balance due plaintiff.

All of the defendants, with the exception of J. A. Hagan, defaulted in the case at bar. The latter,

whom we shall hereafter call defendant, filed a general demurrer to the complaint, and answered, claiming an interest only in that portion of the cattle against which plaintiff claimed a lien by virtue of the mortgage aforesaid, which were branded L U E and L U E, and contending that they were not covered by the mortgage. Plaintiff replied, setting up two certain actions in the superior court of Greenlee county, which he claimed were *res adjudicata* against defendant as to plaintiff's superior lien upon the cattle in question by virtue of the mortgage. The demurrer to the complaint was overruled, and the case was tried before the court sitting without a jury, and judgment rendered ''that there is now due the plaintiff by virtue of said chattel mortgage and indebtedness set forth in said complaint the sum of $62,331.75 with interest thereon from the 10th day of August, 1926, at a rate of 8 per cent. per annum being the total sum of $71,058.19, principal and interest''; and foreclosing the mortgage, ordering that the property be sold at execution sale, and barring and foreclosing all equity of redemption and other claim of defendant to it. From this judgment defendant has appealed.

There are four assignments of error. The first is that the court erred in overruling the demurrer, the second that it erred in denying defendant's motion for judgment on the pleadings, the third that it erred in denying defendant's motion for judgment at the close of the evidence, and the fourth that it erred in denying defendant's motion to strike all of the testimony of plaintiff. We will consider these assignments as seems advisable.

The first one is based on the theory that, when a chattel mortgage has once been foreclosed and the property sold, a second foreclosure against an alleged claim of someone not a party to the original foreclosure may not be had. Ordinarily speaking,

parties must litigate their whole case at the same time, and are not permitted to bring a subsequent action involving part of the same matter. There are, however, exceptions to this rule. This court has held in the case of *Johns* v. *Wilson,* 6 Ariz. 125, 53 Pac. 583, that, where a necessary party defendant to a foreclosure suit has been omitted from the original proceeding, under certain circumstances, the plaintiff may have relief against the omitted party by a supplemental foreclosure. We have reaffirmed this rule in the case of *Williams* v. *Williams,* 32 Ariz. 164, 256 Pac. 356, holding that, where there is a mistake made, whether it be of law or of fact, under proper circumstances, if justice requires it, a second foreclosure suit may be brought. It is true that most cases following this rule hold the proper procedure is to vacate the judgment in the first case and proceed as in an original action. In the case at bar this was not done, the second foreclosure being sought without the vacation of the first judgment. This is erroneous, but the case should not be reversed for such an error unless it appears that defendant was prejudiced thereby. *Gerig* v. *Loveland,* 130 Cal. 512, 62 Pac. 830. We leave the consideration of that feature of the first assignment of error until we have discussed the other assignments.

The second assignment involves the question of whether the chattel mortgage was intended to include the cattle in which defendant claimed an interest, and whether, if it was so intended, as a matter of law it did cover them. We have set forth the descriptive part of the mortgage above. It is contended the mortgage shows on its face that no cattle in existence at the time of its execution branded either L U E or L U Ǝ were included therein, and also that the provision in regard to the increase was meant to apply only to the increase of the horses, and, even if it were meant to apply to the increase of cattle,

the whole provision in regard to such increase is invalid as being an attempt to mortgage animals not *in esse* at the time the mortgage was executed. It is of course obvious that the mortgage was not intended to cover any cattle in existence at the time of its execution branded L U E or L U E. We are of the opinion, however, that the only reasonable construction of the phrase covering the increase is that it was meant that the increase of both horses and cattle, regardless of the brand of the dams, should be branded L U E and be included in the mortgage. *Brown* v. *Schwab,* 27 Ariz. 457, 39 A. L. R. 150, 233 Pac. 593.

We come next to the contention that, regardless of the intention of the parties, a chattel mortgage cannot be made to cover the increase of mortgaged cattle. This is based on the theory that, under the common law, property not *in esse* may not be mortgaged. The question in this precise form has never been before this court. It is common knowledge that for many years chattel mortgages in the state of Arizona have frequently been made to cover both the increase of designated cattle over a period of several years, and crops not even planted at the time of the execution of the mortgage. If it be true that no matter how clearly the intention is expressed a mortgage of such things is so far invalid, it is of great importance to both the lenders and borrowers of money in this state that they know this to be the law. Counsel for defendant has urged as supporting the rule contended for by him the cases of *Battle Creek Valley Bank* v. *First National Bank of Madison,* 62 Neb. 825, 56 L. R. A. 124, 88 N. W. 145, and *Shoobert* v. *De Motta,* 112 Cal. 215, 53 Am. St. Rep. 207, 44 Pac. 487.

The first-named case fully supports the contention of counsel. According to the specific terms of the mortgage therein the plaintiff was given a lien upon said livestock and its increase. The court held that

such a mortgage is invalid. We think, however, the court in that case and counsel for defendant herein have overlooked one of the qualifications of the rule. The principle of law on which defendant relies is stated in Jones on Chattel Mortgages, paragraph 138, as follows: "At common law a mortgage can operate only on property actually in existence at the time of giving the mortgage, and then actually belonging to the mortgagor, or *potentially belonging to him as an incident of other property then in existence and belonging to him.*" (Italics ours.) The increase of cattle would seem logically to come within the last clause of the sentence.

In the second case cited the mortgage therein did not in express terms cover the increase of the livestock specifically mentioned. The Supreme Court of California apparently considered the qualification of the rule, for its decision was merely that under circumstances in states which hold to the lien theory of a mortgage the increase of livestock was not included in the mortgage as a matter of law. That the intention was to limit the decision to the specific facts in the case is shown by the remark of the same court in *First National Bank of Santa Ana* v. *Erreca,* 116 Cal. 81, 58 Am. St. Rep. 133, 47 Pac. 926, wherein it said that in the Shoobert case, *supra,* "it was held that in this state the lien of a chattel mortgage upon domestic animals does not cover the increase of the animals, *unless expressly mentioned therein.*" (Italics ours.)

The Supreme Court of Montana, in *Demers* v. *Graham,* 36 Mont. 402, 122 Am. St. Rep. 384, 13 Ann. Cas. 97, 14 L. R. A. (N. S.) 431, 93 Pac. 268, referred to and quoted from the Shoobert case, and then stated:

"If, in cases like this, it be intended to include the offspring, the mortgage should so state."

The Court of Appeals of Georgia, in *Dixon* v. *Pierce,* 22 Ga. App. 291, 95 S. E. 995, also discussed the Shoobert and Demers cases, and said:

"The main question is whether or not the lien of the mortgage covers the increase of animals included in the mortgage, the increase not being mentioned in the mortgage."

It seems clear to us that the only inference which could be drawn from these last-mentioned cases is that they take it for granted that, if the increase is mentioned in the mortgage it is valid. In reason, the same rule should apply to a mortgage of crops not yet planted, as to a mortgage of cattle not yet *in utero.* And it has been almost universally held that the owner of land might mortgage crops not yet *in esse* but to be raised in the future. *Andrew* v. *Newcomb et al.,* 32 N. Y. 417; *Briggs* v. *United States,* 143 U. S. 346, 36 L. Ed. 180, 12 Sup. Ct. Rep. 391; *Arques* v. *Wasson,* 51 Cal. 620, 21 Am. Rep. 718. One of the very few states not following this last rule is the one from which the case of *Battle Creek Valley Bank* v. *First National Bank, supra,* comes.

The rule claimed by defendant, if a valid one, should apply not only to property not yet *in esse,* but to property not yet acquired by the mortgagor, and for the same reason, to wit, that a man may not sell or encumber property which he does not at the time own. This court has held, however, in the case of *Kastner* v. *Fashion Livery Co.,* 10 Ariz. 23, 85 Pac. 120:

"While a chattel mortgage may include property to be acquired after the execution thereof, the language used must be apt and clear to indicate such purpose."

We have adopted the common law, it is true, but the statute so adopting expressly limits its effect "so far only as it is consistent with, . . . the natural and

physical conditions of this state, and the necessities of the people thereof, and not repugnant to, or inconsistent with, . . . the established customs of the people of this state. . . . '' Paragraph 5555, Rev. Stats. Ariz. 1913, Civ. Code.

Taking into consideration the long-continued and general custom in Arizona of including the increase of livestock in chattel mortgages, and the principles laid down by the many decisions from which we have quoted, we are of the opinion that a mortgage which expressly includes in its terms the increase of livestock described therein is valid as to such increase, even though at the time of the execution of the mortgage they were not *in utero*.

What we have just said disposes also of the third assignment of error, except as to two points. It is urged the evidence shows that there were cattle existing before the mortgage and not covered thereby, branded L U E and L U E, and that since it does not appear whether the cattle so branded and foreclosed were the increase which were covered by the mortgage, or cattle previously branded and not covered by it, the foreclosure as to them is invalid. We have examined the reporter's transcript, and, while the testimony on this point is somewhat ambiguous, we think the trial court was justified in holding, as it must have done, that all cattle branded L U E or L U E were the increase of the cattle covered by the mortgage.

It is further urged that defendant had acquired an interest in these cattle superior to plaintiff's lien through a certain sheriff's sale made under the authority of an attachment levied by W. F. Hagan on said cattle in 1923. We need not discuss this question further than to say we are of the opinion the record does not sustain defendant's contention on this point.

The fourth assignment of error is that the court denied the motion to strike certain testimony of William Cowan on the ground that it was not the best evidence. We have examined the transcript of evidence on this point and find no error in the court's holding.

The only error appearing in the record was the failure to have the judgment in the previous foreclosure vacated before the rendering of the one in this action. If we were to remand a case for a new trial on this ground, the only result would be that the first judgment would be vacated and the same proceedings then gone through as have already taken place, and the ultimate result would not be changed thereby, so far at least as defendant is concerned. In order to justify the reversal of a case, there must not only be error, but it must be prejudicial to the substantial rights of appellant.

The judgment of the superior court of Cochise county is affirmed.

McALISTER and ROSS, JJ., concur.