[Civil No. 3565.   Filed November 18, 1935.]

[51 Pac. (2d) 254.]

T. H. B. GLASPIE, Appellant, v. BUSTER WILL-
IAMS, Appellee.

Mr. D. V. Mulhern and Mr. B. H. Gibbs, for Appellant.

Mr. Walter D. Moore and Mr. Frederic A. Shaffer, for Appellee.

LOCKWOOD, C. J.—Buster Williams, hereinafter called plaintiff, recovered judgment against T. H. B. Glaspie, hereinafter called defendant, in the superior court of Gila county, and, after the usual motion for new trial was overruled, defendant has appealed.

There are some twenty assignments of error which present four propositions of law which we shall consider in their order. That we may do this intelligently it is necessary first to state the facts of the case. It was tried to the court sitting without a jury, and some fifteen findings of fact were made. In accordance with our invariable rule, we must assume that these findings, so far as they are sustained by any competent and reasonable testimony, repre-

sent the true facts of the case. We have read the transcript of evidence carefully, and, taking it as strongly in support of the findings as it may reasonably be construed, the facts of the case may be stated in a narrative form as follows:

On the 2d of February, 1932, defendant was the owner of 1,545 head of angora goats which were on the open range in Pima county. On that date he entered into an oral agreement with plaintiff and one Robert L. Johnston, whose interest in the subject-matter of this action eventually passed to plaintiff, for the purchase and sale of the goats above described. Although Johnston's interest was not transferred to plaintiff until just before this suit was brought, we shall hereafter refer to the latter only as the real party in interest, except as necessary otherwise for the sake of clarity. Under the terms of the agreement, the purchase price was $4,635, to be paid to the defendant as follows: (a) $2,500 by the conveyance to him of certain real estate and personal property in Gila county; and (b) the balance by the delivery to him of a promissory note executed by plaintiff and Johnston, dated February 2, 1933, and secured by a chattel mortgage on the goats purchased, which mortgage, however, did not cover either the mohair to be cut from them or the increase thereof. Defendant agreed that, upon the execution and delivery of proper conveyances to the real and personal property, above described, and the execution and delivery of the note and mortgage, he would make and deliver to plaintiff and Johnston a good and sufficient bill of sale for the goats above described, and for the brand with which they were marked; said brand being duly recorded in the office of the livestock sanitary board in the name of defendant. In pursuance of said agreement, the property in Gila county was properly conveyed to defendant and the deed to the real

estate by him recorded. The note was executed according to the agreement, together with the chattel mortgage above referred to. This note reads as follows:

"$2,135.00                          Winkelman, Ariz.,
                                    "Feb. 2, 1932.

"On or before 18 months after date, for value received we promise to pay to the order of T. H. B. Glaspie Two Thousand One Hundred Thirty-five & no/100 Dollars, at the office of Sam M. Watkins, Winkelman, Ariz., with interest after date at the rate of eight per cent per annum and if not paid at maturity and collected by an attorney or by legal proceedings, an additional sum of ten per cent on the amount of this note as attorney's fees.
"No. 1.    Due August 3, 1933."

The chattel mortgage was in the usual form, but, when it referred to the note, contained this provision:

" . . . According to the conditions of one certain promissory note, executed by Buster Williams and Robert L. Johnston, payable to T. H. B. Glaspie, % Sam M. Watkins at Winkelman, Arizona, viz:
"$2,135.00 Dated 2–3–32 due 8–2–33 with interest at 8 per cent per annum, until paid.
"Payments of at least $200.00 to be made on this note twice per each year *or* at time of shearing said goats. [Italics ours.]
"Then these presents to be void and of no effect. But if default shall be made in the payment of said sum of money, or interest thereon, at the time said note shall become due, or if any attempt shall be made to remove, dispose of or injure said property or any part thereof by said parties of the first part, or any other person, or if said parties of the first part do*es* not take proper care of said property, or if said party of the second part shall at any time deem said goats insecure, then, thereupon and thereafter it shall be lawful, and the said first parties hereby authorize the said second party his heirs or assigns, or his authorized agent, to take said prop-

erty wherever the same may be found, and hold or sell and dispose of the same. . . . ''

Thereupon plaintiff delivered the note and mortgage to defendant, but, notwithstanding his agreement in regard to the bill of sale, the latter refused to deliver it to plaintiff, although repeated demands were made therefor. Physical possession of the goats, however, was given plaintiff, and he proceeded to care for them until they were taken from his possession in August, 1932.

In March, 1932, plaintiff caused the goats to be sheared and the mohair to be stored, but defendant, claiming the ownership thereof, received the use and benefit of all the proceeds derived from its sale. In the early part of June, 1932, defendant went to the camp of plaintiff, and, against the will and consent of the latter, proceeded to brand all the increase of the goats between February and June in his own brand, although plaintiff had previously marked them differently, in order to distinguish them from the goats covered by the agreement of sale and the chattel mortgage. Thereafter, and on the 13th of August, defendant took possession of the goats in question, together with their increase, against the will of plaintiff, and sold them to one Robert Collie. Plaintiff had worked for four and one-half months and Johnston for six months and eleven days in caring for the goats before they were taken possession of by defendant, and the evidence showed that the reasonable value of labor of that kind was $100 per month.

Some time after the foregoing proceedings plaintiff filed this suit. There were many pleadings by both parties, but the matter finally went to trial on the second amended complaint and a counterclaim and cross-complaint; judgment being finally rendered in favor of plaintiff for a conveyance to him of the

property which defendant had received under the agreement, for a cancellation of the note in question, and for $1,286.04 damages. Thereafter plaintiff remitted the sum of $543.33 from the judgment, and, the motion for new trial being overruled, this appeal was taken.

The first question for our consideration is whether the complaint was obnoxious to a demurrer on the ground that it united a cause of action on contract and a cause of action in tort. It is the contention of defendant that it shows on its face that it attempts to set up an action in conversion and also one for a rescission of a contract. We have examined the complaint carefully. It is of considerable length, and we consider it unnecessary to set it forth in full, as our ruling on this particular point would be of no value as a precedent in any other proceeding. It is sufficient for us to say that we think it alleges (a) an oral agreement that plaintiff and defendant should each do certain things, one in consideration of the other; (b) full performance of the agreement by plaintiff in so far as he had been required to perform up to August 13, 1932; (c) a failure of defendant to do all the material things which under the agreement he should have done before that date, and a repudiation of the contract by him on the date just mentioned; (d) an acceptance of such repudiation by plaintiff and an action by him to restore the *status quo ante,* so far as it was possible to do so, and for the damages which he had suffered by reason of defendant's breach of the contract.

It is doubtless true that, upon the facts found by the trial court, had the plaintiff decided to stand upon his contract, he could have sued the defendant for a conversion, but it is the general rule that, if there be an express contract, and the same act or transaction arising as the result of the contract

constitutes both a tort and a breach of the contract, the injured party may waive the tort and sue on the contract. 1 C. J. 1031, and cases cited. In this case it is obvious that plaintiff elected to sue in contract on the theory that, since defendant had repudiated the agreement of sale, as shown by his taking possession of the goats, including those which were not subject to the mortgage, plaintiff might rescind for breach of the contract and ask that he be placed in *status quo ante* by a return of the purchase price and a payment of the damages occasioned him by reason of such breach. The demurrer to the complaint was properly overruled.

What we have just said disposes of the second proposition of law that an unconditional sale of personal property completed by delivery may not be canceled or rescinded and the return of the consideration thereof compelled except on the ground of fraud, accident, mistake, duress, or the like. This may be true as to fully completed contracts of sale when neither party is in default in a material condition of the contract and one of them objects to the cancellation or rescission, but we think it does not apply to the facts of the present case. The bill of sale was never delivered, and defendant's conduct in regard to the mohair and increase of the goats is consistent only with a claim on his part that title to the goats was still in him. Further, the attempted sale to Collie of the goats covered by the original agreement of sale could only be sustained on the theory that title had never passed, for, under section 2334, Revised Code 1928, there are only two methods permitted in Arizona for the foreclosure of a chattel mortgage, and neither of these was followed by defendant.

The third proposition of law is that, when a contract has been reduced in writing, or is evi-

denced by writing, it cannot be altered or varied by parol evidence. It appears from the transcript of evidence that plaintiff offered testimony as to certain customs of the trade in regard to the sale of mohair, and of an oral understanding of when the payment of the note in question should be made. To this defendant strenuously objected on the ground that it would vary the terms of the written contract. We think we need not decide whether or not such evidence was erroneously admitted, for the written instrument which defendant contends the evidence tended to vary will not bear the construction placed on it by him. Defendant claimed during the trial that he was entitled to retake possession of the goats because of a breach of the conditions of the chattel mortgage. It is his contention that under the terms of the mortgage a payment was to be made on the note as soon as the goats were sheared, and that, this not being done, he was entitled to seize the property mortgaged. The mortgage does state that the defendant might take possession of and sell the property covered thereby if default should be made of any money due thereunder. On examining the note, it appears that it was an unconditional promise to pay on or before eighteen months after date. Promises of this nature are always at the option of the payor and not the payee, and there could have been no default until August 2, 1933. The mortgage, however, also provides as follows:

"Payments of at least $200.00 to be made on this note twice per each year *or* at time of shearing said goats." (Italics ours.)

Assuming that the terms of the mortgage instead of those of the note governed, it is apparent that this clause did not authorize defendant to seize the goats for nonpayment on August 13, 1932. It was optional

with plaintiff whether he should pay when the goats were sheared or make two payments of $200 each at any time within the first year. The mortgage year was not up until February 2, 1933, and plaintiff would not have been in default until then, if we are to construe the mortgage provision as referring to that year, or until December 31, 1932, if it means the calendar year. Such being the case, when defendant seized the goats, such seizure could not be sustained on the ground that plaintiff was delinquent in his payments. Neither could it be sustained under the following provisions of the mortgage:

" . . . If said parties of the first part does not take proper care of said property, or. if said party of the second part shall at any time deem said goats insecure. . . . "

Acceleration clauses may not be construed arbitrarily by a mortgagee so as to allow him to seize the mortgaged property on a mere whim. There must be some reasonable violation or probability of violation of the terms of the mortgage. *Flinn* v. *Fredrickson,* 89 Neb. 563, 131 N. W. 934. Defendant in his counterclaim and cross-complaint alleged that they had been violated, first, by plaintiff slaughtering certain of the mortgaged goats, and, second, by failing to keep them in good condition. The court expressly found against him on these allegations except as to certain goats which had been slaughtered by plaintiff, and as to these found that they had been killed with the consent of the defendant. It thus appears that on no theory was defendant entitled to seize the mortgaged goats for a breach of the mortgage. It is therefore immaterial as to whether the testimony of plaintiff and his witnesses in regard to the custom concerning the sale of mohair was properly admitted or not. When a case is tried to the

court and there is evidence before it, both competent and incompetent, and either class is sufficient to sustain a finding, we must presume that the court disregarded the incompetent evidence and based its findings solely on that which was competent. *Boston & Arizona Smelting etc. Co.* v. *Lewis,* 3 Ariz. 5, 20 Pac. 310; *Shannon Copper Co.* v. *Potter,* 13 Ariz. 245, 108 Pac. 486.

The last proposition of law is that, when a mortgagee takes possession of property covered by a chattel mortgage for the failure of the mortgagor to make the payments set forth in the mortgage, such taking will not constitute grounds for the rescission of the prior sale of the property or render the mortgagee liable in damages for thus taking it. This is, of course, true, provided the taking is a lawful one, but when, as in this case, it appears conclusively from the findings of the trial court that the mortgagee was not justified in taking the property, we think that the principle does not apply. But, even assuming that there might have been merit in the contention that plaintiff had breached the conditions of the mortgage so that the defendant was entitled to seize the mortgaged property, there was no excuse whatever for his taking the increase of such property. If we are to assume it was a completed sale, so that title had passed to plaintiff, and he had given a mortgage back of the property sold, a mortgage on livestock does not carry the increase of such stock unless it is so provided in the mortgage itself. *Brown* v. *Schwab,* 27 Ariz. 457, 233 Pac. 593, 39 A. L. R. 150; *Hagan* v. *Cowan,* 35 Ariz. 334, 278 Pac. 68. Such being the case, under no theory except that he had repudiated the sale could defendant claim any right to take such increase, and his action in so doing was properly construed by the trial court as constituting a repudiation of the contract on his part,

which justified defendant in asking for a rescission, and that he recover the purchase price already paid and his damages.

This disposes of all the assignments of error raised by defendant. His fatal mistake was in the assumption that plaintiff had breached the conditions of the mortgage so that he was justified in seizing the mortgaged property, and that, if there was such a breach of the mortgage, he had the right to seize the increase of the goats originally sold by him and of the mohair sheared from them.

For the foregoing reasons, the judgment of the superior court is affirmed.

McALISTER and ROSS, JJ., concur.