[Civil No. 4510. Filed February 8, 1943.]

[133 Pac. (2d) 1013.]

JOHN CARL, Appellant, v. R. F. McDONALD, Appellee.

Messrs. Patterson & McFate, for Appellant.

Messrs. Morgan & Locklear, for Appellee.

STANFORD, J.—On the 11th day of June, 1938, the appellant, John Carl, purchased a small sawmill near Stoneman's Lake from appellee, R. F. McDonald, under a written conditional sales contract, which contract provided, among other things, that the price should be $650, payable in monthly payments of $108, either in cash or in lumber and if lumber was used in making the payments, the price of the lumber was to be $12 per thousand feet of good merchantable lumber. The first payment was due July 11, 1938, and thereafter monthly payments to be made on the 11th day of each and every month.

The latter part of September, before the October payment was due, the appellant was unfortunate in having

received a sentence to serve 30 days in the Yavapai County jail for driving a motor vehicle while under the influence of intoxicating liquor.

On or about October 1, 1938, Earl Bruce, who was the owner of the land upon which Carl procured his timber, called at the jail and the appellant gave him possession of the mill to finish sawing certain orders for lumber and requested him to make the payment due October 11th, the other monthly payments having been made.

In addition to the three payments of $108 each, the sum of $25.60 had also been made on the October 11th instalment, making a total of $349.60 paid on the purchase price, which amount was more than one-half of the purchase price of the sawmill.

On the morning of October 11th the appellee, McDonald, went to the Yavapai County jail and saw the appellant. Carl testified that McDonald said at that time, among other things:

"John, I'll tell you, I am going to repossess the mill and when you get out you run the mill the same as ever. I just want to repossess it and to make Earl Bruce quit running it."

The evidence shows that on the 11th day of October appellee sold the sawmill to Bruce without the knowledge and consent of the appellant. The evidence further shows that the appellant had on hand in the yard at the mill 35,000 feet of lumber at the time of the sale to Bruce by appellee. This was more than enough to pay in lumber the instalment due on October 11th.

The appellant filed his action April 24, 1941, asking for the recovery of the sums paid on the purchase price and for damages.

In the first cause of action the appellant alleged that written conditional sales contract was modified on October 11, 1938, by an oral agreement, whereby McDonald was to take possession of the sawmill until the

28th day of October, 1938, at which time the appellee was to redeliver the possession of the sawmill to appellant.

In the second cause of action the appellant alleges fraud.

At the close of appellant's case the Court directed a verdict for the defendant.

After the judgment plaintiff filed an amended complaint alleging, among other things, the breach of the written conditional sales contract.

Appellant's first two propositions of law concern the oral modification of the written contract.

 It is our opinion that the evidence was insufficient to show any oral modification. In this conversation of October 11th, there was no offer made by McDonald and no acceptance by Carl. The statement by McDonald was no more than a declaration as to what he proposed to do. There was no invitation to the appellant to accept or reject.

 However, there was evidence of a breach of the written conditional sales contract. The possession by the appellee of the sawmill was not with the consent or assent of the appellant. Appellant's testimony as to the conversation between the appellant and the appellee at the county jail was as follows:

"Q. Did you agree to that? A. I did not agree to nothing.

"Q. Did you signify your willingness? A. No, I did not say a thing. I just figured when he got up there that Bruce would have the money to pay him and he couldn't do nothing.

"Q. What did you say? A. I just said 'good luck' or something like that.

"Q. You told him 'good luck'? A. I told him 'good bye.'

"Q. Did you say 'good luck' to him when he left? A. I said, I may have. I don't know what I did say. Didn't say anything that meant anything.

"Q. Did you express your willingness to let him? A. No, I didn't. I didn't even give it a thought because I already had a man to run the mill, in fact to make the payment, so I didn't give it a thought.

"Q. In that conversation between you and Mr. Mc-Donald there at the jail at that time after he told you that he was going to repossess the mill and turn it back to you when you got out of jail, what did you say to him? A. Oh, I said 'fine.' "

The testimony shows that the appellant neither consented nor assented to the repossession.

The repossession by the appellee was made before the appellant was in default. This act of the appellee amounted to a repudiation of the written conditional sales contract. If the appellant had been in default, the appellee's failure to comply with the provisions of the conditional sales act respecting repossession, notice and resale would also have amounted to a repudiation of the contract.

Although the appellant had paid more than 50 per cent of the purchase price, the appellee immediately resold the sawmill to Earl Bruce without notice to Carl.

Since the appellee repudiated the contract by taking possession of the sawmill, the appellant might rescind for breach of contract and ask that he be placed in *status quo ante* by the return of his purchase price and the payment of damages occasioned him by reason of such breach. *Glaspie* v. *Williams,* 46 Ariz. 381, 51 Pac. (2d) 254.

Appellee in his answer pleads the two year statute of limitations applicable to tort actions. Appellant, however, affirms the contract and sues for damages for its breach, his claim being on the contract and for its breach. Limitations would not run for four years as provided in Section 29–204, Arizona Code, 1939.

The plaintiff having proved a breach of the written conditional sales contract, the question then

arises as to whether it was error for the trial court to direct a verdict for defendant because of the failure of the plaintiff to prove the alleged oral modification of the conditional sales contract and its breach.

Under Section 21-449, Id., issues tried by express or implied consent of the parties shall be treated in all respect as if they had been raised in the pleadings. Since the evidence entitled the plaintiff to recover for the breach of the written conditional sales contract he made a case sufficient to go to the jury, and it was reversible error for the trial court to direct a verdict for defendant.

The case is reversed with directions to grant a new trial on the amended complaint.

McALISTER, C. J., and ROSS, J., concur.