220 P.2d 857

**GALLAWAY v. SMITH et al.**

No. 5128.

Supreme Court of Arizona.

July 15, 1950.

Jennings, Strouss, Salmon & Trask, of Phoenix, attorneys for appellant.

Renz L. Jennings, Carl Tenney, of Phoenix, attorneys for appellees Thelma Sweat and Otto Sweat.

Darrell R. Parker, of Phoenix, attorney for appellees John F. Smith and Kenneth W. Franklin.

UDALL, Justice.

The sole question presented by this appeal is whether the trial court erred in directing verdicts for the defendants and in entering judgment against plaintiff in accordance with the verdicts.

Appellant-plaintiff, Grace M. Gallaway, brought this action to recover the sum of $6250 against defendants-appellees, Thelma Sweat, a real estate broker, her husband Otto Sweat, the National Surety Company, a corporation, surety on the broker's official bond, and John F. Smith and Kenneth W. Franklin, purchasers of the restaurant property in question. The amended complaint, upon which the case was tried, alleged: that in November of 1946, plaintiff was the owner of a restaurant lo-

cated at 1735 East Van Buren Street, Phoenix, Arizona, together with the furniture and fixtures located therein; that on November 14, 1946, she entered into a brokerage contract with defendant, Thelma Sweat, to sell the restaurant for a commission of 5%; that said broker did sell the restaurant for the sum of $6250 to defendants Smith and Franklin, receiving the purchase price from them and delivering a bill of sale from plaintiff to the purchasers who took possession thereof. It is further alleged that Thelma Sweat subsequently failed to pay the net purchase price over to the plaintiff but instead, without plaintiff's knowledge or consent, returned same to the purchasers.

While certain admissions, hereinafter enumerated, were made by the answering defendants, they all denied the plaintiff's ownership of the restaurant at the time of the sale. The purchasers set forth in their answer the assertion that the restaurant was in fact owned by one James C. Estes, who they allege had transferred it to the plaintiff in violation of a restraining order procured against him in a then pending divorce action and that therefore the entire transaction was a fraud upon them and it was for this reason that they had demanded and obtained a return of the consideration from the broker. As an affirmative defense, Thelma Sweat alleged that she had returned the money to the purchasers pursuant to an authorization from plaintiff.

The case was tried before the court sitting with a jury. Plaintiff's case consisted solely of her own oral testimony and the admission in evidence of two bills of sale and a telegram. When plaintiff Gallaway rested a motion to require her to elect whether to proceed by way of a demand for specific performance or an action for damages was denied by the court. All of the defendants then made motions for instructed verdicts upon the ground that plaintiff had failed to establish a prima facie case. The court, without specifying the basis therefor, granted said motions in favor of all defendants and directed judgment to be entered accordingly. After a denial of a motion for new trial this appeal followed.

It is unquestionably the rule in Arizona that a motion for directed verdict should be denied where there is competent evidence to support the plaintiff's case. The most recent expression of this rule is found in Nichols v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201, 204:

"* * * A motion of this kind is regarded as admitting the truth of whatever competent evidence the opposing party had introduced including the reasonable inferences to be drawn therefrom, and it is only where the evidence is insufficient to support a verdict, or where it is so weak that upon a motion for a new trial after verdict the court would feel constrained to

set it aside, that the court is justified in directing a verdict. [citing cases]

"Ordinarily an appellate court in determining an appeal views the evidence, where it is conflicting, in the light most favorable to a sustaining of the lower court's judgment. [Citing cases] A reverse rule however applies where, as here the trial court directs the jury to return a verdict for the defendants. The conflicting evidence then must be viewed in a light most favorable to plaintiff. [Citing cases]."

To which may well be added the following statements:

"The weight, sufficiency or probative force of the evidence is for the jury. Tom Reed Gold Mines Co. v. Brady, 58 Ariz. 44, 117 P.2d 484; Sitkin v. Smith, 35 Ariz. 226, 276 P. 521, 66 A.L.R. 645; Miller Cattle Co. v. Francis, 38 Ariz. 197, 298 P. 631; Fernandez v. State, 16 Ariz. 269, 144 P. 640.

"A verdict will not be directed where the evidence is conflicting, or where, on all the facts and circumstances proven, there is room for fair and sensible men to differ in their conclusions. Cope v. Southern Pac. Co., 66 Ariz. 197, 185 P.2d 772; Durham v. Firestone Tire & Rubber Co., 47 Ariz. 280, 55 P.2d 648."

It is also fundamental that the plaintiff need offer no proof in support of such allegations of her complaint as are admitted to be true by the answers filed in the case, and that such admitted facts may be considered as a part of the evidence in the case. Perley v. Goar, 22 Ariz. 146, 195 P. 532; Consolidated Nat. Bank of Tucson v. Cunningham, 24 Ariz. 437, 210 P. 850; State ex rel. Conway v. Glenn, 60 Ariz. 22, 131 P.2d 363.

Considering first the pleadings, we find the following necessary elements of plaintiff's case as alleged in her complaint to have been admitted by the answers, viz.: (1) that Thelma Sweat, the broker, made the sale to defendants Smith and Franklin; (2) that the consideration agreed upon was $6,250.00; (3) that this consideration was paid to the broker by the purchasers; (4) that the defendants Smith and Franklin went into possession of the restaurant; (5) that the consideration was thereafter returned by the defendant Thelma Sweat, to defendants Smith and Franklin; (6) that defendants Smith and Franklin have retained the consideration returned to them and have "declined to have any further connection with the transaction." Furthermore, the plaintiff's testimony stands uncontradicted that the purchase price was returned to Smith and Franklin by Mrs. Sweat without plaintiff's knowledge or consent.

The only other matter which plaintiff would be required to prove in order to establish a prima facie case would appear to be the issue as to whether or not she was the owner of the restaurant and its appurtenant furniture and fixtures. In analyzing plaintiff's testimony as to this cru-

cial question, we shall state same in the light most favorable to her. At the outset she testified:

"Q. Mrs. Gallaway, on or about November 14th, 1946 what was your occupation? A. *Cafe operator and owner at 1735 East Van Buren.*

"Q. In Phoenix, Arizona? A. That is right." (Emphasis supplied.)

and later in the trial the following question was asked and answer thereto given, viz.:

"Q. * * *. Isn't it true at that time you never even demanded this money because you knew the whole thing belonged to Mr. Estes? A. I did not know no such thing. *It belonged to me—*" (Emphasis supplied.)

Incidentally, as to the claim that the property belonged to James C. Estes on November 14, 1946, it is interesting to note that at the insistence of the defendants, Estes was brought in as a party to the suit and filed a formal pleading in which he denied ownership of the cafe and asserted it was owned on the date last named by the plaintiff, Grace M. Gallaway.

As to this matter of ownership it is the contention of the defendants that plaintiff on cross examination gave testimony that refutes her claim of ownership and conclusively establishes that she was not the legal owner of the restaurant and hence they assert the trial court was fully justified in taking the case from the jury. It was developed at the trial that the restaurant had formerly been owned by one John Jarvis. The latter, on July 1, 1946, sold the property to James C. Estes for $5,000, payable $3,200 down and $1,800 payable on or before October 1, 1946, with interest at 6% on the unpaid balance. Jarvis retained the bill of sale made to Estes as security for this unpaid balance. On July 4, 1946, the plaintiff came to Phoenix at the request of Estes to manage and operate the restaurant. The next day she met Jarvis and paid him the balance of $1,800 due him and Jarvis thereupon delivered to her the bill of sale he was holding as security, writing upon the face of this instrument the following: "This bill of sale assigned and delivered to Grace M. Gallaway for balance due on same. * * *" Plaintiff further testified that when the $1,800 was paid Jarvis she intended it as a loan to Estes and that she was holding the bill of sale as security for the money thus advanced. She also testified, in effect, that in October when the balance became due from Estes she demanded payment and when Estes did not pay she demanded possession of the restaurant which was delivered to her early in November and she thereafter considered the property as belonging to her and made arrangements for the sale in question.

Obviously these transactions were handled by these laymen in a very unconventional manner and without the aid of legal advice. Concededly there was no judicial foreclosure of what amounted to a chattel

mortgage. It should be remembered however that we are not dealing with real estate where the record title becomes so vitally important. None of the muniments of title to these chattels were recorded. No one was produced who claimed any title superior to that of the plaintiff. Neither Jarvis nor Estes made any claim to the ownership of the cafe at the time of the sale by Gallaway to Smith and Franklin and as a matter of fact Estes participated in a conference between plaintiff and the purchasers relative to certain details of the sale. Certainly by such conduct Estes was estopped to later assert any claim of ownership to the property in question. The purchasers, Smith and Franklin, were not being disturbed in their possession or having the bill of sale from plaintiff challenged when they received back the purchase price from Thelma Sweat.

The great weight of authority is to the effect that while chattel mortgages are usually enforced by following the methods prescribed by statute for foreclosing them, that other methods of enforcement are not thereby excluded. See Annotation 88 A.L.R. p. 912 for authorities so holding. Such we believe to be the rule in Arizona, i. e. that the specific remedies given by our code are not exclusive. In support of this statement we cite the cases of Mooney v. Broadway, 2 Ariz. 107, 11 P. 114 and Central Finance Corp. v. Norton-Morgan Commercial Co., 23 Ariz. 517, 205 P. 810, 813, wherein appears this statement: "* * *, and until foreclosure *or some act tantamount thereto,* the title to the property mortgaged remains in the mortgagor. * * *" (Emphasis supplied.)

Nor do we consider the holding in the case of Glaspie v. Williams, 46 Ariz. 381, 51 P.2d 254, 257, to the effect that under the code, Sec. 2334, R.C.1928 "* * * there are only two methods permitted in Arizona for the foreclosure of a chattel mortgage, * * *." as being in conflict therewith. In the latter case this court was referring solely to statutory remedies.

Under the peculiar circumstances of this case we are of the opinion that a judicial foreclosure of the chattel mortgage was unnecessary. Here the rights of creditors were not involved and the debtor and mortgagor recognized his obligation and made no objection to the summary method of foreclosure pursued in the instant case, hence we believe that plaintiff by taking over the property and selling same with Estes' knowledge and consent foreclosed the mortgage she held just as effectively as had a suit been filed. As stated in 10 Am.Jur., Chattel Mortgages, par. 242:

"It is generally held that methods prescribed by statute for foreclosing chattel mortgages are not exclusive and do not prevent a resort to other methods, though a contrary rule obtains in some states.

"In general a mortgage not recorded and not requiring record is to be foreclosed like

other mortgages, and the same is true of a land contract which is a common-law mortgage of the yearly crop to be grown to secure payment to be made that year. *A sale of the mortgaged property by the mortgagee with the mortgagor's consent has been said to operate as a formal foreclosure of the mortgage."* (Emphasis supplied.)

Defendants make much ado about the fact that the lower court in the Estes divorce matter had issued an order restraining James C. Estes from disposing of any of the community assets (this included the equity in the restaurant property). Plaintiff testified that she did not learn of this restraining order until after the sale to defendants Smith and Franklin, whereupon, after consultation with all the interested parties, she consented to defendant Thelma Sweat retaining the purchase price for the protection of all parties until the divorce decree was entered. It appears that the decree finally entered awarded the equity in the restaurant to Mr. Estes, but in the meantime the broker, Thelma Sweat, had taken it upon herself to declare the deal fraudulent and returned the purchase price to Smith and Franklin.

█ We fail to see where the restraining order in the divorce matter affects the validity of plaintiff's title. If the latter's testimony is accepted at face value there were acts tantamount to a summary foreclosure of a chattel mortgage rather than a sale from Estes to her. The remedy for the violation of a restraining order is punishment for contempt of court. In the case of Southard v. Latham, 18 N.M. 503, 138 P. 205, 206, 50 L.R.A., N.S., 871, it is stated: "* * * Transfers of property made to innocent third parties, in violation of a restraining order, are not void nor voidable because made in disregard of such an order. * * *" See also Sec. 21-1607, A.C.A.1939; 28 Am.Jur., Injunctions, Sec. 330; and Picerne v. Redd, 72 R.I. 4, 47 A.2d 906, 166 A.L.R. 397. Insofar as this appeal is concerned, on the record now before us, we are constrained to hold that title passed to plaintiff Gallaway irrespective of any violation of the restraining order by Estes. Defendants Smith and Franklin alleged in their answer that at the time they purchased the cafe they were ignorant of the facts concerning the restraining order, hence it was not binding upon them either.

█ Finally we consider the claimed right of the broker, Thelma Sweat, to rescind the contract and refund the purchase price. Her agency, as we view it, extended only to making a sale and it was not her prerogative to set herself up as judge and jury and determine that a fraud had been committed and then purportedly acting in behalf of her principal to rescind the sale. Fraud was one of the affirmative defenses and at the time the court directed the verdict no evidence had as yet been introduced to support

it. The true rule governing a situation of this kind is found in 2 Am.Jur., Agency, sec. 130:

" * * * As in the case of authority to contract, it has been taken as the general rule that authority to sell does not, unless otherwise agreed, include authority to rescind or modify the terms of the sale after its completion or to act further with reference to the subject-matter except to undo fraud or correct mistake. * * *"

We are of the opinion that the plaintiff made a prima facie case against the defendants and therefore the trial court erred in taking the case from the jury by instructing a verdict against plaintiff. The court should have put the defendants to their proof.

Judgment reversed and the cause remanded for a new trial.

LA PRADE, C. J., and STANFORD, PHELPS and DE CONCINI, JJ., concur.